GRUBER, Appellee,

v.

OHIO DEPARTMENT OF HUMAN SERVICES, Appellant.

[Cite as *Gruber v. Ohio Dept. of Human Serv.* (1994), 98 Ohio App.3d 72.]

Court of Appeals of Ohio,
Delaware County.

No. 94CAE06015.

Decided Oct. 28, 1994.

*Martin, Pergram & Browning Co., L.P.A.,* and *Dennis L. Pergram,* for appellee.

*Lee Fisher,* Attorney General, and *Alan P. Schwepe,* for appellant.

READER, Judge.

Appellant, the Ohio Department of Human Services, appeals the judgment of the Delaware County Common Pleas Court reversing appellant's administrative decision to deny appellee Cecil Gruber's application for Medicaid benefits.

Appellant presents two assignment of error:

"I. The lower court erred when it determined that resources, instead of income, are to be transferred first by the institutionalized spouse to the community spouse to raise the income of the community spouse to the minimum monthly maintenance needs allowance if the income of the community spouse from all sources, including interest generated by the community spouse resource allowance, does not reach the minimum monthly maintenance needs allowance.

"II. The lower court erred by failing to give deference to the appell[ant]'s interpretation of its regulations."

Appellee resides in a nursing facility. Appellee's wife, Mary Gruber, resides in Delaware. In November 1992, appellee applied for Medicaid benefits. In February 1993, the Delaware County Department of Human Services ("DCDHS") completed a resource assessment of appellee and his wife. DCDHS concluded that the Grubers' resources totaled $126,569.10, and that Mary's resource allocation was $62,284.55. Mary's minimum monthly maintenance needs allowance was determined to be $1,149. Mary receives monthly social security benefits of $458, and monthly profit sharing payments of $97.09. Cecil receives social security benefits of $260 per month, and monthly public employee retirement benefits of $839.

DCDHS denied appellee's application on the basis of excess resources. On Gruber's administrative appeal, the case proceeded to a hearing on the question of whether Mary was entitled to all of the couple's resources in order to generate enough income to raise her total monthly income to the minimum level. At all levels of the administrative agency, appellee's application was rejected.

Appellee appealed to the Delaware County Common Pleas Court. DCDHS argued that Cecil must transfer his income to Mary before he could transfer resources. However, the court found the applicable federal law to be clear and unambiguous, allowing a spouse to transfer resources before income.

I

For the reasons stated in the well-considered opinion of the trial court, attached and incorporated herein (see Appendix), entered May 23, 1994, the first assignment of error is overruled.

II

■ Appellant argues that the trial court erred in failing to give deference to the agency's interpretation of the relevant law. The court found that the applicable law was clear and unambiguous, and concluded that the agency's interpretation of the law was incorrect. The court did not err in this conclusion.

As the court found no room in the statutes for differing interpretations, the court did not need to defer to the agency's interpretation.

The second assignment of error is overruled.

The judgment of the Delaware County Common Pleas Court is affirmed.

*Judgment affirmed.*

GWIN, P.J., and SMART, J., concur.

Appendix

HENRY E. SHAW, JR., Judge.

This case is presently pending before this court upon the administrative appeal of Cecil Gruber ("appellant") of a decision of the Ohio Department of Human Services ("ODHS") denying appellant's application for Medicaid benefits. Appellant filed said notice of appeal with the office of the clerk of this court on September 14, 1993. On September 29, 1993, the ODHS filed a certified copy of the record of the proceedings. On January 18, 1994, appellant filed his brief in support of the notice of appeal. On February 2, 1994, appellee filed a brief contra. On February 22, 1994, appellee filed a motion for leave to submit supplemental authority. On February 24, 1994, the court granted appellee's motion. On February 25, 1994, appellant filed a reply brief.

The pertinent facts of this are as follows. Appellant is currently residing in a nursing facility. Appellant applied for Medicaid benefits on or about November 23, 1992. At all relevant times, Mary Gruber, appellant's wife, resided in the family residence. On or about February 26, 1993, the Delaware County Department of Human Services ("DCDHS") completed a resource assessment identifying the resources of Cecil Gruber and Mary Gruber. The resources, consisting mainly of certificates of deposit, totaled $126,569.10. Mary Gruber's community spouse resource allowance ("CSRA") was initially determined to be $62,284.55. At all relevant times, interest rates on the bank deposits ranged from 3.25 percent to 4.00 percent.

The DCDHS also determined that Mary Gruber's minimum monthly maintenance needs allowance ("MMMNA") was $1,149. At the time of the Medicaid application, Mary Gruber was receiving monthly social security benefits in the amount of $458 and monthly payments from a profit sharing plan in the amount of $97.09. Cecil Gruber has monthly social security benefits in the amount of $260 and monthly public employee retirement ("PERS") benefits in the amount of $839. The parties agree, even though appellee contends its relevancy, that if Cecil Gruber were to die today, Mary Gruber would not receive his social security benefits and would only receive $420 to $440 a month of the PERS benefits.

On February 26, 1993, the DCDHS mailed a notice to appellant denying his application on the basis of excess resources. The DCDHS acknowledges that all other eligibility requirements have been met. Appellant filed a timely notice of appeal, and a hearing was held on May 27, 1993 before Hearing Officer Margo Walker. At the hearing, testimony was taken and exhibits were introduced into evidence. These exhibits are part of the record before this court. The issue before Hearing Officer Walker was whether Mary Gruber is entitled to all of her and her husband's resources so that she would have sufficient resources to generate enough interest income, when added to her other income, to raise her total monthly income to the MMMNA level of $1,149. On July 23, 1993, Hearing Officer Walker issued a recommendation that the appeal be overruled. Hearing Authority George Harper accepted the recommendation and overruled the appeal.

Appellant timely appealed from the state hearing decision. On August 17, 1993, an administrative appeal decision was issued affirming the state hearing decision. Appellant then filed a timely notice of appeal from the administrative appeal decision and the matter is now before this court.

Appeals from an administrative agency of the state of Ohio are governed by the Administrative Procedure Act, R.C. Chapter 119. Under R.C. 119.12, a court of common pleas sits as a "mini" appeals court in review of the record established before the administrative agency. The scope of review is limited to a decision as to whether the order of the agency is supported by reliable, probative, and substantial evidence and is in accordance with law. Where the record in an appeal under R.C. 119.12 is in accordance with law and is supported by reliable, probative, and substantial evidence, a court may not substitute its judgment for that of the agency, but must affirm the order. *Harris v. Lewis* (1982), 69 Ohio St.2d 577, 23 O.O.3d 485, 433 N.E.2d 223. If the administrative agency's decision is in accordance with law and is supported by reliable, probative, and substantial evidence, it is immaterial that the reviewing court, if it were the original trier of fact, may have reached a different conclusion. *Westerville City Schools v. Ohio Civ. Rights Comm.* (1980), 1 OBR 312, 1980 WL 4646.

In the case *sub judice*, appellant was determined to be ineligible for Medicaid, as his resources, in the amount of $64,284.55, exceeded the $1,500 resource limitation ($64,284.55 is appellant's share of the couple's total resources of $126,569.10, minus the spousal resource share of $62,284.55). However, appellant points out that his wife's resources of $62,284.55 will not be sufficient to generate enough income to meet her MMMNA. Therefore, appellant contends that he should be permitted to transfer all of his resources to her so that she can use the

investment income in an attempt to reach her MMMNA. Appellant admits that even if this is accomplished and the resources are invested in a safe investment earning a current reasonable rate of return that this strategy probably would not raise Mary Gruber's income to the previously determined MMMNA level of $1,149. The end effect of a determination that all of appellant's resources should be allocated to Mary Gruber would be to lower appellant's resource level below the Medicaid $1,500 limitation, thus making appellant eligible for Medicaid and opening the door for the actual post-eligibility transfer of said resources to Mary Gruber.

However, appellee takes the position that appellant's income should first be transferred to his spouse to raise her income level to $1,149. As noted before, appellant has a total monthly income of $1,099 ($260 per month from social security and $839 per month in PERS benefits). Mary Gruber has a total monthly income of $555.09 ($458 per month from social security benefits and $97.09 from her profit sharing plan). By shifting $593.91 of appellant's monthly income to Mary Gruber, her monthly income would reach the $1,149 level allowed by the MMMNA. At this point in the analysis, it is important to note the difference between what is resources and what is income. In this context, resources is roughly equivalent to capital, while income corresponds to the interest earned on that capital or additional income such as social security benefits.

ODHS has been designated as the state agency responsible under Section 1396a(a)(5), Title 42, U.S.Code, for the administration of the Ohio Medicaid program. R.C. 5111.01. The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 79 Stat. 343, as amended, Section 1396 *et seq.*, Title 42, U.S.Code, is a joint federal/state program providing federal financial assistance to states that choose to participate. States are reimbursed for certain costs of medical treatment for needy persons. *Harris v. McRae* (1980), 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784. Ohio has elected to participate in this program. R.C. 5111.02. One of the medical services reimbursed under the Ohio Medicaid program is the recipient's cost of care in a nursing facility.

States which participate in the program are required to develop a plan containing reasonable standards for determining eligibility for and the extent of medical assistance. Section 1396a(a)(17), Title 42, U.S.Code. An individual is eligible for Medicaid if he fulfills the criteria established by the state in which he lives. However, state Medicaid programs must be in compliance with federal law and with the regulations promulgated by the Secretary of the United States Department of Health and Human Services. *Schweiker v. Gray Panthers* (1981), 453 U.S. 34, 37, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460, 465.

■ The federal law that governs the issue before the court is referred to as the Medicare Catastrophic Coverage Act ("MCCA") and is found at Section 1396r–5, Title 42, U.S.Code. MCCA was designed to "[p]rotect the elderly and disabled population from the financial disaster caused by catastrophic health care expenditures not currently reimbursed under Medicare and Medicaid programs. * * *" H.R.Rep. No. 100–105(II), 4 U.S.Code Cong. & Admin.News (1988) 803, 858. Part of the statutory scheme of MCCA involves the preservation of income and resources for use by the noninstitutional spouse, thus avoiding spousal impoverishment:

"The Committee bill would end spousal impoverishment. It revises the current Federal requirements relating to attribution of income, attribution of resources, transfer of resources, and post-eligibility application of income. These revisions are limited to the context of a couple with one spouse in an institution who applies for or receives Medicaid. The purpose of these revisions is to assure that the community spouse in these circumstances has income and resources sufficient to live with independence and dignity." H.R.Rep. No. 100–105(II), 4 U.S.Code Cong. & Admin.News (1988) 892.

"Institutionalized spouse" ("IS") is defined in Section 1396r–5(h)(1), Title 42, U.S.Code, as an individual in a medical institution or nursing facility who is married to a spouse who is not in a medical institution or nursing facility. "Community spouse" ("CS") is defined in Section 1396r–5(h)(2), Title 42, U.S.Code, as the spouse of the institutionalized spouse.

One of the first steps the administrative agency must do when considering an application for Medicaid benefits is to complete a resource assessment. Section 1396r–5(c), Title 42, U.S.Code, provides, in pertinent part, as follows:

"(1) Computation of spousal share at time of institutionalization.

"(A) Total joint resources.

"There shall be computed (as of the beginning of the first continuous period of institutionalization (beginning on or after September 30, 1989) of the institutionalized spouse)—

"(i) the total value of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest, and

"(ii) a spousal share which is equal to ½ of such total value."

DCDHS completed a resource assessment and determined that the total resources of Cecil and Mary Gruber were $126,569.10.

Section 1396r–5(d)(3), Title 42, U.S.Code, mandates that the state shall establish a MMMNA for each CS and provides as follows:

"(3) Establishment of minimum maintenance needs allowance

"(A) In general

"Each State shall establish a minimum monthly maintenance needs allowance for each community spouse which, subject to subparagraph (C), is equal to or exceeds—

"(i) the applicable percent (described in subparagraph (B)) of $\frac{1}{12}$ of the income official poverty line (defined by the Office of Management and Budget and revised annually in accordance with sections 9847 and 9902(2) of this title) for a family unit of 2 members; plus

"(ii) an excess shelter allowance (as defined in paragraph (4))."

Mary Gruber's MMMNA has been established to be $1,149.

Section 1396r–5(c)(2), Title 42, U.S.Code, provides that at the time of application for Medicaid benefits, all resources of the IS and CS are considered available to the IS, but only to the extent that the amount of such resources exceeds the amount computed under subsection (f)(2)(A). Section 1396r–5(c)(2), Title 42, U.S.Code, provides the following:

"(2) Attribution of resources at the time of initial eligibility determination

"In determining the resources of an institutionalized spouse at the time of application for benefits under this subchapter, regardless of any State laws relating to community property or the division of marital property—

"(A) except as provided in subparagraph (B), all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse, and

"(B) resources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds the amount computed under subsection (f)(2)(A) of this section (as of the time of application for benefits).

Section 1396r–5(f)(1), Title 42, U.S.Code, provides that an IS may transfer an amount equal to the community spouse resource allowance ("CSRA"), but only to the extent that the resources of the institutionalized spouse are transferred to, or for the benefit of, the community spouse. Such a transfer shall not be disqualifying. The CSRA is defined in Section 1396r–5(f)(2), Title 42, U.S.Code, as the greatest amount resulting from four calculations.

Section 1396r–5(f), Title 42, U.S.Code, provides as follows:

"(f) Permitting transfer of resources to community spouse

"(1) In general

"An institutionalized spouse may, without regard to section 1396p(c)(1) of this title, transfer an amount equal to the community spouse resource allowance (as

defined in paragraph (2)), but only to the extent the resources of the institutional-ized spouse are transferred to (or for the sole benefit of) the community spouse. The transfer under the preceding sentence shall be made as soon as practicable after the date of the initial determination of eligibility, taking into account such time as may be necessary to obtain a court order under paragraph (3).

"(2) Community spouse resource allowance defined

"In paragraph (1), the 'community spouse resource allowance' for a community spouse is an amount (if any) by which—

"(A) the greatest of—

"(i) $12,000 (subject to adjustment under subsection (g) of this section), or, if greater (but not to exceed the amount specified in clause (ii)(II)) an amount specified under the State plan,

"(ii) the lesser of (I) the spousal share computed under subsection (c)(1) of this section, or (II) $60,000 (subject to adjustment under subsection (g) of this section),

"(iii) the amount established under subsection (e)(2) of this section; or

"(iv) the amount transferred under a court order under paragraph (3);

"exceeds

"(B) the amount of the resources otherwise available to the community spouse (determined without regard to such an allowance)."

In the instant case, DCDHS determined that the CSRA is $62,284.55. However, MCCA provides for a revision of the CSRA when the CSRA is inadequate to provide the CS with sufficient income to meet the MMMNA. Section 1396r–5(e)(2)(C), Title 42, U.S.Code, provides as follows:

"(C) Revision of community spouse resource allowance

"If either such spouse establishes that the community spouse resource allow-ance (in relation to the amount of income generated by such an allowance) is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, there *shall* be substituted, for the community spouse resource allowance under subsection (f)(2) of this section, an amount adequate to provide such a minimum monthly maintenance needs allowance." (Emphasis added.)

Appellant relies on Section 1396r–5(e)(2)(C), Title 42, U.S.Code, and argues that it was an error not to revise Mary Gruber's CSRA since the income from the initial CSRA is inadequate to raise her monthly income level to meet the MMMNA of $1,149. Appellee disagrees and argues that the MCCA requires that income, not resources, to be transferred first. In other words, appellee argues

that Section 1396r–5(d), Title 42, U.S.Code, should be applied before Section 1396r–5e(2)(C). Section 1396r–5(d), Title 42, U.S.Code, states, in pertinent part, the following:

"(d) Protecting income for community spouse

"(1) Allowances to be offset from income of institutionalized spouse

"After an institutional spouse is determined or redetermined to be eligible for medical assistance, in determining the amount of the spouse's income that is to be applied monthly to payment for the costs of care in the institution, there shall be deducted from the spouse's monthly income the following amounts in the following order:

"(A) A personal needs allowance * * *

"(B) A community spouse monthly income allowance (as defined in paragraph (2)), but only to the extent income of the institutionalized spouse is made available to (or for the benefit of) the community spouse.

" * * *

"(2) Community spouse monthly income allowance defined

"In this section (except as provided in paragraph (5)), the 'community spouse monthly income allowance' for a community spouse is an amount by which—

"(A) except as provided in subsection (e) of this section, the minimum monthly maintenance needs allowance (established under and in accordance with paragraph (3)) for the spouse, exceeds

"(B) the amount of monthly income otherwise available to the community spouse (determined without regard to such an allowance)."

Appellee makes the argument that "the rule is that the income of the institutionalized spouse is utilized first and only if insufficient income exists does a transfer of additional resources occur." Appellee's argument is based upon Chicago Region State Letter No. 51–93 by the Chicago Region of the Health Care Financing Administration ("HCFA") of the United States Department of Health and Human Services. It should be noted that Ohio falls within the Chicago Region. Attached to the letter is a policy statement dated November 16, 1993 from the Medicaid Bureau of HCFA. The policy statement addresses the issue of raising the MMMNA (which is not at issue) and where additional funds shall come from to meet the MMMNA.

The policy statement that appellee relies upon as persuasive evidence is flawed. First, MCCA is unambiguous and therefore is not open to interpretation by the HCFA. However, assuming, *arguendo*, that the MCCA is ambiguous and is therefore open to interpretation by the administrative agency, the HCFA incor-

rectly applies the MCCA. The policy statement promotes the rule that hearing officers may use Section 1396r–5(e)(2)(C) to increase the community spouse's resource amount, but only after failing to meet the MMMNA, first by utilizing Section 1396r–5(d) which provides for a Community Spouse Monthly Income Allowance ("CSMIA"). A CSMIA is a shifting of the institutionalized spouse's monthly income to the CS. The effect is to shelter that income for the CS. The HCFA's rationale for utilizing a CSMIA instead of raising the CSRA is to keep the CS from investing the CSRA in investments that give a nominal rate of return, such as 1%, then requesting a hearing to raise the CSRA in order to generate more income. By doing this the CS could shelter resources that Congress did not intend to be sheltered. This reasoning fails to support the HCFA's interpretation of MCCA because this issue is resolved by requiring hearing officers to impute a reasonable rate of return under Section 1396r–5(e)(2)(C) on the CSRA, no matter what the actual rate of return is. This is the route that most states' administrative agencies and courts follow. The HCFA's rationale does not have any applicability to the transfer of resources after a reasonable rate of return has been imputed to the CSRA.

The only other basis provided by HCFA in the policy statement for requiring a transfer of income before resources is its interpretation of the MCCA. A clear application of MCCA, without attempting to interpret what Congress's unwritten intentions were, produces a different result than appellee and the HCFA desire. There is absolutely no language in the MCCA that mandates that income should first be shifted as a CSMIA before the CSRA should be increased to allow the CS to generate sufficient income from the CSRA to reach the MMMNA level. In fact, this court, like most states' administrative agencies, finds that the MCCA requires that resources, not income, to be shifted first. See *In re Hearing of Claimant Jane*, Administrative Hearing No. 91035034 CC, California Department of Human Services. In addition, the same result has been reached in the commonwealth of Virginia and the state of Indiana in similar fact patterns.

Section 1396r–5(e) provides that the CS or IS may request a hearing if he or she is dissatisfied with a determination of the CSRA as defined in Section 1396r–5(f)(2). Section 1396r–5(f)(2) provides that a CSRA can be established by four different methods. Of relevance to this case is Section 1396r–5(f)(2)(A)(iii), which provides that the CSRA is an amount that has been established under Section 1396r–5(e)(2). Section 1396r–5(e)(2)(C) mandates that if either spouse establishes that the CSRA is inadequate to generate sufficient income to meet the MMMNA, there shall be substituted for the CSRA under Section 1396r–5(f)(2) an amount adequate to provide for such income to meet the MMMNA. This language is very specific to provide and mandate that the CSRA be raised to meet the MMMNA. There is no similar language concerning the CSMIA.

Further, MCCA implies that the CSRA is to be transferred before a CSMIA is considered, not after, and that a CSMIA is to be based upon not only the original CSRA, but also the adjustments to the CSRA as provided pursuant to Section 1396r–5(e). For example, Section 1396r–5(d)(2), which defines CSMIA, states that the CSMIA is an amount by which, *except as provided in Section 1396r–5(e),* the MMMNA exceeds the amount of monthly income otherwise available to the CS. When determining a CSMIA, the monthly income from the initial CSRA and the adjusted additional amount provided under Section 1396r–5(e)(2)(C) are to be subtracted from the MMMNA guideline provided by the state. This calculation is necessary to determine if the CS is eligible for a CSMIA. A CS is eligible for a CSMIA only if either the total final CSRA is not sufficient to provide an income level set by the MMMNA, or if there are extenuating circumstances that require that the CS receive additional funds above the MMMNA. The latter is not applicable to the present case. In applying MCCA to the facts of this case, resources must first be transferred to Mary Gruber in an attempt to raise Mary Gruber's income level to the MMMNA level. If there are not enough resources to accomplish this goal, after imputing a reasonable rate of return on said resources, Mary Gruber may seek an additional monthly allowance as a CSMIA to provide herself with sufficient income to reach the MMMNA from the income that is remaining and still available to the IS. This is the only course of action that Congress has provided.

It must be remembered that the purpose of shifting income or resources is to bring the CS income level up to the MMMNA. The ability to have a hearing to determine the CSMIA will not generate any additional income for the CS since Section 1396r–5(d) provides for allowances to be offset from the institutionalized spouse's income only after the IS is determined or redetermined to be eligible for medical assistance. Since a pre-eligibility shifting of income cannot take place, this is not a viable method for raising the community spouse's income level to the designated MMMNA. In this case, appellant is not yet eligible for Medicaid; thus, a CSMIA is of no assistance to the Congressional objective of providing the CS with a sheltered income level equal to the MMMNA.

Section 1396r–5(e)(2)(C) is not limited to post-eligibility determinations, unlike Section 1396r–5(d). Since the MMMNA must be met, and since Section 1396r–5(e)(2)(C) provides the only method to meet the MMMNA, the agency has no choice but to transfer over the amount of resources that is necessary to raise Mary Gruber's income level to meet the MMMNA.

Appellee additionally argues that Ohio's implementation of MCCA provides that income, not resources should be shifted first. To be specific, appellee relies upon Ohio Adm.Code 5101:6–7–02(A)(4), which provides, in pertinent part, the following:

"If either the IS or the CS can document that the CS resource allowance (in relation to the amount of income generated by it) is inadequate to raise the CS's income to the MMMNA, a hearing decision may substitute a higher resource allowance to provide additional income as necessary. * * * "

Assuming, *arguendo,* that ODHS did act within the bounds of the MCCA, this court is at a loss to understand how Ohio Adm.Code 5101:6–7–02(A)(4) can be interpreted to also require a transfer of income before resources when it specifically states that "a hearing decision may substitute a higher *resource allowance* to provide additional income as necessary" (emphasis added). While the only issue before the court is whether Ohio's Medicaid plan is in compliance with the federal law and regulations promulgated by the Secretary of the United States Department of Health and Human Services, this court interprets Ohio Adm.Code 5101:6–7–02(A)(4) to support the court's analysis that resources, not income, must first be transferred to allow the CS to attain the MMMNA level.

Upon due and careful consideration of the entire record, the court finds that the ODHS has not complied with the MCCA and that the ODHS has incorrectly determined that income must first be transferred to the CS as a CSMIA before the CS may obtain a transfer of additional resources to increase the CSRA as allowed pursuant to Section 1396r–5(e)(2)(C). The court therefore finds that the administrative appeal decision affirming the state hearing decision was not based upon substantial, reliable and probative evidence on the whole record and that the decision is not in accordance with law. Accordingly, the court hereby reverses the August 17, 1993 administrative appeal decision affirming the state hearing decision.

*So ordered.*