*319
 
 OPINION OF THE COURT
 

 Simons, J.
 

 Under a 1988 amendment to the Medicaid program, the financially dependent spouse of an individual who is institutionalized for long-term, Medicaid-subsidized medical care is entitled to a minimum monthly maintenance allowance awarded from the income of the institutionalized spouse. The minimum allowance is set by statute but must be increased upon a showing of exceptional circumstances resulting in financial distress to the noninstitutionalized spouse. Petitioners commenced this CPLR article 78 proceeding to challenge the determination of respondent Commissioner of Social Services that the expense of providing a private secondary and college education for their child does not qualify as an exceptional circumstance for purposes of mandating an increase in the community spouse income allowance. The courts below sustained the Commissioner’s determination, as do we.
 

 I
 

 Medicaid, a joint Federal and State program, provides for the medical care of individuals whose own income and resources are insufficient to meet the costs of their medical needs. Because Medicaid is a means-tested program, its benefits are only available to those whose income and resources fall below a certain level. Moreover, once a Medicaid-qualified individual enters a nursing home, most of the income the Medicaid recipient does have must be applied to the cost of nursing home care. Under prior law, an institutionalized spouse could make income available to his or her noninstitutionalized spouse (termed the community spouse) only up to the medical assistance eligibility level or the public assistance standard of need, whichever was higher. As a result, many community spouses found themselves virtually impoverished because the greater part of the couple’s income derived from a pension or other source that was solely in the name of the institutionalized spouse.
 

 To ameliorate this harsh result, Congress in 1988 amended the rules for treatment of the income and resources of the institutionalized spouse as part of the Medicare Catastrophic Coverage Act (42 USC § 1396r-5, as amended by Pub L 100-
 
 *320
 
 360, 102 US Stat 753). Noting that "the leading cause of financial catastrophe among the elderly is the need for long-term care”, the legislation was expressly directed at ending the "pauperization” of the community spouse
 
 (see,
 
 HR Rep No. 100-105 [II], 100th Cong, 2d Sess, reprinted in 1988 US Code Cong & Admin News, at 888). The Act provided for an allowance to the community spouse paid out of the institutionalized spouse’s income in order to bring the community spouse’s income up to a minimum monthly needs allowance specified in the statute
 
 (see,
 
 42 USC § 1396r-5 [d]).
 
 [1]
 

 The allowance is paid only to the extent that the institutionalized spouse has sufficient income to cover it — that is, the State is not required to make up any shortfall between the statutory allowance and what the institutionalized spouse is able to provide. However, the institutionalized spouse’s contribution to his or her own medical expenses is reduced by the amount of the community spouse allowance, and that reduction must be made up from public funds.
 

 The statute further provides for a separate family member allowance to be paid to a minor child, dependent child, dependent parent or dependent sibling of either the institutionalized or the community spouse, if over half of that family member’s needs are met by either the institutionalized spouse or the community spouse (42 USC § 1396r-5 [d] [1] [C]). Finally, in recognition that the minimum maintenance allowance may not be adequate in every case, the statute permits either the institutionalized spouse or the community spouse to establish at a fair hearing "that the community spouse needs income, above the level otherwise provided by the minimum monthly maintenance needs allowance, due to exceptional circumstances resulting in significant financial duress”
 
 (see,
 
 42 USC § 1396r-5 [e] [2] [B]).
 

 In order to receive Federal Medicaid funds, a State’s Medicaid plan must conform to the standards set out in Federal statutes and regulations. Accordingly, in 1989 the State enacted Social Services Law § 366-c, the State counterpart to the
 
 *321
 
 spousal allowance provisions of the Federal Medicare Catastrophic Coverage Act. Section 366-c (8) (b), mirroring the equivalent Federal provision, directs that the community spouse allowance must be increased "based upon exceptional circumstances which result in significant financial distress (as defined by the commissioner in regulations).” To implement the statute, respondent Commissioner of Social Services accordingly issued Administrative Directive 89 ADM-47, codified as 18 NYCRR 360-4.10 (a) (10):
 

 "[significant financial distress means exceptional expenses * * * [which] may be of a recurring nature or may represent major one time costs, and may include but are not limited to: recurring or extraordinary noncovered medical expenses [of the community spouse or family members as defined in the Directive]; amounts to preserve, maintain or make major repairs on the homestead; and amounts necessary to preserve an income-producing asset.”
 

 On its face, the regulation does not purport to include all expenses that might be considered as exceptional.
 

 The question raised on this appeal is whether respondent Commissioner’s determination here that the voluntarily assumed costs of a private secondary and college education for petitioners’ daughter do not constitute exceptional circumstances for the purposes of Social Services Law § 366-c is an overly restrictive interpretation of the statutory provision, in derogation of the legislative intent.
 

 II
 

 In October 1989, petitioner Alice Schachner, the primary income provider in the Schachner household, became so debilitated by Alzheimer’s disease that she required nursing home care. Mrs. Schachner was receiving a monthly pension of $2,850 and $1,000 in monthly Social Security disability payments; her husband, petitioner Erwin Schachner, received income of approximately $550-$600 per month. At the time Mrs. Schachner entered the nursing home, the Schachners’ daughter Erica was 17 years old and attended a private secondary school. Alice Schachner applied for, and received, Medicaid coverage for her nursing home expenses, and in November 1990 the New York City Department of Social Services also awarded petitioner Erwin Schachner a monthly
 
 *322
 
 community spouse income allowance of $1,083.14 for the period October 1989 through December 1989, and of $1,126.14 for the period January 1990 through December 1990. Erica, who was now attending a private college, received a family member allowance of $190 per month for the same period. Petitioners requested a fair hearing to challenge the amount of income that Mrs. Schachner was required to contribute to her own care and the amount of Mr. Schachner’s allowance.
 

 Prior to the fair hearing, petitioner Erwin Schachner brought a proceeding in Family Court on behalf of himself and Erica, seeking an order of support against his wife. In April 1991, Family Court issued an order directing Mrs. Schachner to pay $3,386.02 in monthly support, beginning in January 1991. Accordingly, Mr. Schachner’s community spouse income allowance was raised to $3,386.02, effective January 1991, as both the State and Federal statutes provide that the allowance shall not be less than the amount of court-ordered support
 
 (see,
 
 42 USC § 1396r-5 [d] [5]; Social Services Law § 366-c [2] [g]).
 

 When the previously requested fair hearing was held, petitioners sought a retroactive increase in Mr. Schachner’s community spouse income allowance for the period not covered by Family Court’s support order. Petitioners contended that certain of Mr. Schachner’s medical expenses and Erica’s private school and college expenses constituted "exceptional circumstances” within the meaning of Social Services Law § 366-c and entitled Mr. Schachner to an increased allowance. The Hearing Officer concluded that these expenses were not exceptional or extraordinary and denied the requested increase, and petitioners sought article 78 review of that determination. Supreme Court dismissed the petition, and the Appellate Division affirmed. The Court took the view that the sorts of expenses enumerated in the regulation defining exceptional circumstances only "pertain to things which may be deemed 'necessaries’ ”, and providing a college education to a child is not a necessary expense for which the parent may be obligated under the common law, absent special circumstances or a voluntary agreement (203 AD2d 21, 22). We agree with the Appellate Division that the voluntarily assumed expenses of a private secondary and college education are not the sort of "exceptional expenses” contemplated by Social Services Law § 366-c, although we reach that conclusion by a different route.
 

 
 *323
 
 III
 

 Our analysis begins, and indeed essentially ends, with the legislative intent underlying the Medicare Catastrophic Coverage Act and its State counterpart: "to end th[e] pauperization [of the community spouse] by assuring that the community spouse has a sufficient — but not excessive — amount of income and resources available” while the institutionalized spouse is in a nursing home at Medicaid expense
 
 (see,
 
 HR Rep No. 100-105 [II],
 
 op. cit.,
 
 at 888). In its memorandum in support of legislation to conform the Social Services Law to the changes in the Federal law, the Executive Department made clear that the need for section 366-c arose from the "new federal standards concerning spousal impoverishment”
 
 (see,
 
 Mem of State Exec Dept, 1989 McKinney’s Session Laws of NY, at 2204). And, in approving the 1989 amendments to the Social Services Law, then-Governor Cuomo underscored that the primary focus of the legislation was to ensure that "[o]ur senior citizens should not live their golden years in the shadow of impoverishment”
 
 (see,
 
 Governor’s Approval Mem, L 1989, ch 558, 1989 McKinney’s Session Laws of NY, at 2415).
 

 Manifestly, the narrow purpose of the legislation providing for the spousal allowance is to protect the community spouse from financial disaster when the primary income-providing spouse becomes institutionalized.
 
 [2]
 
 The handful of decisions in other States that have considered the matter uniformly take this view
 
 (see, e.g., Ford v Iowa Dept. of Human Servs.,
 
 500 NW2d 26, 27 [Iowa] [purpose of catastrophic care statute is "to ameliorate the financial hardship suffered by aging couples faced with the high cost of nursing home care”];
 
 Gruber v Ohio Dept. of Human Servs.,
 
 98 Ohio App 3d 72, 647 NE2d 861).
 

 Despite petitioners’ insistence that the State and Federal statutes seek to provide financial security to the
 
 families
 
 of nursing home patients, the legislative history makes clear that the focus of the statutory protection provided through the community spouse income allowance is the dependent, elderly spouse. The statutory scheme recognizes that either the institutionalized or the community spouse may be providing finan
 
 *324
 
 cial support to other family members, but provides for this contingency through the separate family member allowance— which is subject to a separate increase under appropriate circumstances — and by recognizing that the financial burden placed on the community spouse of caring for "a disabled child, sibling or other immediate relative” may constitute the "exceptional circumstances” on which an increased allowance can be predicated
 
 (see,
 
 HR Conf Rep No. 100-661, 100th Cong, 2d Sess, reprinted in 1988 US Code Cong & Admin News, at 1044-1045). We therefore reject petitioners’ argument that the existence of minor children is itself an "exceptional circumstance” for the elderly community spouse generally envisioned by the statute. Congress clearly took into account that such situations exist, and made provision for them.
 

 Petitioners’ argument that Family Court’s award of support in an amount that greatly exceeded the minimum monthly needs allowance constituted "compelling evidence” that Erwin and Erica Schachner could not "survive” on the statutory allowance is also unpersuasive.
 
 [3]
 
 Initially, it should be noted that Family Court’s award contemplated the support of both Erwin and Erica, while the community spouse income allowance is focused on the needs of the community spouse alone. Family Court may award "fair and reasonable” spousal and child support taking into account the circumstances of the respective parties, including their accustomed standard of living
 
 (see,
 
 Family Ct Act §§ 412, 413; Besharov, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 412, 1995 Cum Ann Pocket Part, at 5, 6), while only those exceptional circumstances that result in "financial duress” may be considered on an application for an increase in the community spouse income allowance. Moreover, Family Court in awarding support must consider the parental obligation to provide for a child and for a child’s
 
 *325
 
 education
 
 (see,
 
 Family Ct Act § 413 [1] [c] [7]). The statutory provision for the community spouse income allowance is not grounded even in the obligation of one spouse to support the other, much less in the obligation of the parent to support a child. Rather, the statute seeks only to mitigate a perceived societal wrong that is a by-product of the Medicaid scheme itself.
 

 Although the Appellate Division incorrectly concluded that only expenses for common-law "necessaries” may create financial duress for purposes of increasing the community spouse income allowance, it is clear that Social Services Law § 366-c contemplates that an increase is available only to alleviate true financial hardship that is thrust upon the community spouse by circumstances over which he or she has no control, as exemplified by the circumstances enumerated in 18 NYCRR 360-4.10 (a) (10): extraordinary medical expenses, and the need to preserve the homestead or an income-producing asset. The entry of a family member into a nursing home, particularly where that family member is the primary income producer, may have a devastating effect on a family’s standard of living, but the focus of these ameliorative statutes, both State and Federal, is solely on the prevention of the sort of financial catastrophe to the elderly community spouse that too often ensued under the prior statutory scheme for Medicaid-funded care. Thus, respondent’s determination that petitioners’ voluntarily assumed expenses for the private secondary and college education of their child in this case do not constitute "exceptional circumstances resulting in significant financial duress” for the purposes of an increased community spouse income allowance is both rational and in harmony with the legislative intent behind Social Services Law § 366-c. We have considered petitioners’ remaining contentions and find them either without merit or unpreserved.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . Each State is permitted to establish a minimum monthly needs allowance that is equal to or exceeds the minimum set by Congress. In the original legislation, the maximum permissible allowance was capped at $1,500, but subsequent increases in the cap have been allowed. Currently, the minimum monthly maintenance needs allowance in New York is $1,718. In addition, the community spouse is permitted to retain resources up to a value of $60,000 without imperiling the institutionalized spouse’s Medicaid eligibility.
 

 [2]
 

 . A
 
 separate section of the bill that added section 366-c to the Social Services Law also incorporated into the Social Services Law Federal provisions for Medicaid reimbursement to school districts and counties for services to students and preschool age children with handicapping conditions
 
 (see,
 
 Social Services Law §§ 368-d, 368-e).
 

 [3]
 

 . Although respondent Commissioner of the New York City Department of Social Services urges on this appeal that Family Court’s award of support in excess of the amount of the community spouse income allowance was erroneous as a matter of law, the City respondent took no cross appeal in this matter. Although petitioners themselves point out the anomaly in the statutory scheme under which a community spouse may ultimately obtain a higher allowance than that specified in the statute by obtaining a Family Court support order, petitioners understandably do not contest the propriety of Family Court’s award. They contend only that Family Court’s support award should have been regarded by the department as "compelling evidence” of Erwin Schachner’s needs. Thus, the City respondent’s contention is not properly before the Court, and we do not consider it today.