[863 NYS2d 706]

In the Matter of JOHN BALZARINI, Petitioner, v SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Respondents.

Second Department, September 2, 2008

**APPEARANCES OF COUNSEL**

*Lewis C. Edelstein*, Garden City, for petitioner.

*Christine Malafi*, *County Attorney*, Central Islip (*Karin A. Bohrer* of counsel), for Suffolk County Department of Social Services, respondent.

*Andrew M. Cuomo*, *Attorney General*, New York City (*Michael S. Belohlavek* and *Justin R. Long* of counsel), for New York State Department of Health, respondent.

**OPINION OF THE COURT**

SPOLZINO, J.P.

The 76-year-old petitioner was admitted to a nursing home on March 8, 2005. In a determination dated May 26, 2005, the respondent Suffolk County Department of Social Services (hereinafter the DSS) approved his application for Medicaid benefits, but determined that because his wife's income exceeded the "Medicaid minimum monthly maintenance needs allowance" of $2,378, none of the petitioner's income could be used to assist his wife in paying her expenses and all of his income would be used in partial payment of his nursing home costs. At the time, the petitioner's income from Social Security and a private pension was approximately $2,500 per month, his wife earned $2,445 per month from similar sources, and their combined monthly expenses were approximately $4,900.

Asserting that his wife would be unable to support herself without his financial contribution, the petitioner requested a fair hearing pursuant to Social Services Law § 22 before the respondent New York State Department of Health (hereinafter the DOH). At the hearing, the petitioner's wife and son argued on his behalf that his wife's situation constituted exceptional circumstances which result in significant financial duress (*see* 42 USC § 1396r-5 [e] [2] [B]), and on that basis requested that his income, or at least a portion of it, be released to her pursuant to Social Services Law § 366-c (8) (b). Accepting as true the wife's account of her income and expenses, the DOH, in a determination dated December 16, 2005, nevertheless rejected the petitioner's argument on the ground that the expenses were not "exceptional" within the meaning of the applicable statute and regulations, and affirmed the DSS's determination.

The question presented by this proceeding is whether the DOH was correct in doing so. We conclude that it was not, but upon applying the correct standard, we find nevertheless that there was substantial evidence to support the determination in part. Accordingly, we grant the petition to the extent of annulling so much of the DOH's determination as affirmed so much of the DSS's determination as denied that portion of the petitioner's application which was to increase the Medicaid minimum monthly maintenance needs allowance to include expenses for housing, utilities, automobile, Medicare, food, clothing, medical care, and home maintenance, vacating so much of the DSS's determination as denied that portion of the application, and granting that portion of the application to the extent of remitting the matter to the DOH for the calculation of the increase in the minimum monthly maintenance needs allowance so that a portion of his income will be made available to his wife. We otherwise deny the petition, affirm the determination, and dismiss the proceeding on the merits.

Title 11 of article 5 of the Social Services Law, of which Social Services Law § 366-c is a part, implements the federal Medicaid program (*see* Social Services Law § 363-a).

> "Medicaid, a joint federal-state program established pursuant to title XIX of the Social Security Act (42 USC § 1396 *et seq.*), pays for medical care for those unable to afford it, including nursing home care for medically needy older people who become eligible by incurring medical expenses that reduce their monthly income and assets below prescribed levels" (*Matter of Tomeck*, 8 NY3d 724, 727-728 [2007]; *see Atkins v Rivera*, 477 US 154, 156-157 [1986]; *Matter of Gomprecht v Gomprecht*, 86 NY2d 47, 49 [1995]).

Because Medicaid eligibility is determined on the basis of financial need, a person who requires long-term medical care must use his or her own income to pay for that care until the eligibility threshold is met. As a result, prior to the enactment of the Medicare Catastrophic Coverage Act (42 USC § 1396r-5, added by Pub L 100-360, 102 US Stat 754, as amended) in 1988, financially-dependent spouses of individuals receiving long-term Medicaid-subsidized medical care often "found themselves virtually impoverished because the greater part of the couple's income derived from a pension or other source that was solely in the name of the institutionalized spouse" (*Matter of Schachner v Perales*, 85 NY2d 316, 319 [1995]). The Medicare Cata-

strophic Coverage Act addressed this concern by permitting all or part of the income of the person receiving care, known as the institutionalized spouse, to be paid to his or her spouse, known as the community spouse, where the income of the community spouse is insufficient to meet his or her needs (*see* 42 USC § 1369r-5 [d]).

The amount that ordinarily will be available to the community spouse, which is known as the "community spouse monthly income allowance" (42 USC § 1369r-5 [d] [2]), is determined by comparing the income of the community spouse to another factor known as the Medicaid "minimum monthly maintenance needs allowance" (42 USC § 1369r-5 [d] [3]). The Medicaid minimum monthly maintenance needs allowance is an amount theoretically determined by each state (*see* 42 USC § 1396r-5 [d] [3] [A]) to be the "amount deemed sufficient for the community spouse to live at a modest level after the institutionalized spouse becomes eligible for Medicaid, subject to a statutory floor and ceiling" (*Matter of Tomeck*, 8 NY3d at 728; *see* 42 USC § 1396r-5 [d] [3]; Social Services Law § 366-c [2] [h], [j]; [3]). In reality, the Medicaid minimum monthly maintenance needs allowance, at least insofar as it affects New York residents, is determined by federal law, since it is not permitted to exceed the sum of $1,500 in 1988 dollars (*see* 42 USC § 1396r-5 [d] [3] [C]; [g]). The minimum monthly maintenance needs allowance for 2005 was thus capped at $2,378. The community spouse monthly income allowance is simply the amount "by which the minimum monthly maintenance needs allowance for the community spouse exceeds the monthly income otherwise available to the community spouse" (Social Services Law § 366-c [2] [g]).

The Medicare Catastrophic Coverage Act allows for some relief from this strict calculation by providing that where either spouse

> "establishes that the community spouse needs income, above the level otherwise provided by the minimum monthly maintenance needs allowance, due to exceptional circumstances resulting in significant financial duress, there shall be substituted, for the minimum monthly maintenance needs allowance . . . an amount adequate to provide such additional income as is necessary" (42 USC § 1396r-5 [e] [2] [B]).

Consistent with this provision, Social Services Law § 366-c (8) (b) directs that the community spouse allowance must be

increased "[i]f either spouse establishes that the community spouse needs income above the level established by the social services district as the minimum monthly maintenance needs allowance, based upon exceptional circumstances which result in significant financial distress (as defined by the commissioner in regulations)." The regulations define "significant financial distress" as:

> "exceptional expenses which the community spouse cannot be expected to meet from the monthly maintenance needs allowance or from amounts held in resources. Such expenses may be of a recurring nature or may represent major one time costs, and may include but are not limited to: recurring or extraordinary noncovered medical expenses; amounts to preserve, maintain or make major repairs on the homestead; and amounts necessary to preserve an income-producing asset." (18 NYCRR 360-4.10 [a] [10].)

In applying this complex statutory and regulatory framework here, neither the DSS nor the DOH disputed that Mrs. Balzarini incurs housing costs on a monthly basis of $1,580, consisting of mortgage interest and amortization in the sum of $1,115, condominium common charges of $345, real estate taxes of $95, and homeowner's insurance of $25; that her utility costs are $196 per month; that she has monthly automobile expenses of $717, consisting of a $406 loan payment, $93 in insurance costs, and $218 for fuel, maintenance, and repairs; that she pays a monthly Medicare premium of $78; that her monthly expenses for food, clothing, medical care, and home maintenance are $760; or that she pays $1,483 per month in credit card payments. As a result, her usual monthly expenses of $4,814 exceed her monthly income of $2,445 by $2,369.

The DOH nevertheless affirmed the denial of the petitioner's request, concluding that while these expenses were unquestionably legitimate, they were nevertheless "ordinary," and reasoning that "exceptional circumstances do not include usual household monthly expenses such as those cited, even when the actual expenses are unusually high by reasonable standards." Reading the statute and regulations in light of the clear legislative intent, however, we conclude that reasonable, ordinary expenses can be a sufficient basis upon which additional income of the institutionalized spouse may be made available to the community spouse, and that in the circumstances presented here, the DOH should have granted the petitioner's request in part.

The authorities that have addressed the meaning of "exceptional circumstances which result in significant financial distress" (Social Services Law § 366-c [8] [b]; 42 USC § 1396r-5 [e] [2] [B]) have not been required to decide whether reasonable, ordinary expenses can satisfy that standard. In *Matter of Schachner v Perales* (85 NY2d 316, 322 [1995]), the Court of Appeals held that voluntarily-assumed expenses for private secondary and college education do not constitute exceptional expenses within the meaning of Social Services Law § 366-c. Similarly, in *Matter of Gomprecht v Gomprecht* (86 NY2d 47, 52 [1995]), the Court of Appeals held that Medicaid funds were not available to pay for the cost of a home on Long Island for a community spouse who also had resources sufficient to maintain an apartment in Manhattan (*see also Matter of Allen v Allen*, 236 AD2d 470, 471 [1997]). By contrast, in *Matter of Golf v New York State Dept. of Social Servs.* (91 NY2d 656, 659 [1998]), the Court of Appeals sustained a finding that the cost of a home health aide and other ordinary expenses incurred as a result of the ill health of the community spouse did constitute "exceptional circumstances" (*see also Matter of White v White*, 229 AD2d 296, 298-299 [1997]). In none of these decisions, however, did the Court address the application of the "exceptional circumstances" standard to reasonable, ordinary expenses that significantly exceed the income of the community spouse.

Since the issue is one of statutory interpretation, the touchstone of the analysis is the legislative intent (*see Matter of M.B.*, 6 NY3d 437, 447 [2006]). Fortunately, the legislative intent here is well documented. The Medicare Catastrophic Coverage Act of 1988 was enacted for the express purpose of "ending the 'pauperization' of the community spouse" (*Matter of Schachner v Perales*, 85 NY2d at 320, quoting HR Rep 100-105 [II], 100th Cong, 1st Sess, at 65, reprinted in 1988 US Code Cong & Admin News, at 888). Its "narrow purpose . . . is to protect the community spouse from financial disaster when the primary income-providing spouse becomes institutionalized" (*Matter of Schachner v Perales*, 85 NY2d at 323) "by assuring that the community spouse has a sufficient—but not excessive—amount of income and resources available . . . while [the institutionalized] spouse is in a nursing home at Medicaid expense" (HR Rep 100-105 [II], 100th Cong, 1st Sess, at 65, reprinted in 1988 US Code Cong & Admin News, at 888; *see Matter of Tomeck*, 8 NY3d at 728). The goal is that "the community spouse in these circumstances has income and resources sufficient to live with inde-

pendence and dignity" (HR Rep 100-105 [II], 100th Cong, 1st Sess, at 69, reprinted in 1988 US Code Cong & Admin News, at 892).

The case law recognizes this purpose. While relief is not available to maintain a "life-style" at public expense (*Matter of Gomprecht v Gomprecht*, 86 NY2d at 52), neither is it limited to payment for "necessaries" (*Matter of Schachner v Perales*, 85 NY2d at 325). Rather, "these provisions are designed to insure that the community spouse retains necessary, but not excessive, income and assets, which do not need to be depleted to make the institutionalized spouse eligible for Medicaid" (*Matter of Tomeck*, 8 NY3d at 728).

The need of one spouse for long-term medical care may reduce, but does not eliminate, the ordinary living expenses of the community spouse. As a result, the income of the community spouse can be depleted just as easily by ordinary expenses as it can by exceptional, or unforeseen, expenses, where those ordinary expenses are extraordinary in relation to the individual income of the community spouse. Moreover, the need for long-term medical care cannot always be anticipated and its duration is often not readily apparent. Even with the best of intentions and expert financial planning, therefore, the community spouse is frequently unable to reduce expenses significantly. If the community spouse is to have "income and resources sufficient to live with independence and dignity" (HR Rep 100-105 [II], 100th Cong, 1st Sess, at 69, reprinted in 1988 US Code Cong & Admin News, at 892), therefore, the calculation of the funds that will be available to her cannot ignore those expenses that may have been ordinary before, but have become extraordinary in terms of the income that is available to the community spouse without the contribution of the institutionalized spouse.

The regulatory language recognizes this by defining "significant financial distress" as "exceptional expenses which the community spouse cannot be expected to meet from the monthly maintenance needs allowance or from amounts held in resources" (18 NYCRR 360-4.10 [a] [10]). The definition does not distinguish "exceptional expenses" that arise unexpectedly from those that are ordinary or usual. Rather, the regulatory language focuses on whether the community spouse can be expected to meet his or her needs from what would otherwise be available under the minimum monthly maintenance needs allowance. The conclusion that recurring expenses may satisfy

the definition is confirmed by the examples that are cited, which include "recurring *or* extraordinary" noncovered medical expenses (*id.* [emphasis added]) and amounts necessary to "preserve" and "maintain" the household (*id.*). The only reasonable reading of this language is that ordinary expenses may qualify as exceptional by reason of their relationship to the community spouse's means.

To reach a contrary result would be inconsistent with the intent of the statute. Under the statute, the impoverishment of the community spouse is the result to be avoided, not the standard against which the financial condition of the community spouse is to be judged. "Manifestly, the narrow purpose of the legislation providing for the spousal allowance is to protect the community spouse from financial disaster when the primary income-providing spouse becomes institutionalized" (*Matter of Schachner v Perales*, 85 NY2d at 323). "[T]he focus . . . is solely on the prevention of the sort of financial catastrophe to the elderly community spouse that too often ensued under the prior statutory scheme for Medicaid-funded care" (*id.* at 325). That catastrophe can occur just as easily by reason of ordinary expenses as it can by reason of expenses that are unexpected.

Mrs. Balzarini's budget, which is uncontested here, illustrates this point. The mortgage, condominium common charges, real estate taxes, and homeowner's insurance certainly constitute "exceptional expenses" for the purposes of Social Services Law § 366-c (8) (b) under the express language of the regulation as they are recurring expenses necessary "to preserve [and] maintain . . . the homestead" (18 NYCRR 360-4.10 [a] [10]). With the exception of the credit card expenses, the remaining recurring monthly expenses are all necessities of daily living. Surely the statute and regulations did not intend that where housing costs exhaust the minimum monthly maintenance needs allowance, the community spouse should not be entitled to some funds with which to pay for food and other necessities of life.

The reasonableness of Mrs. Balzarini's expenses is also undisputed here. Her situation is not like that presented in *Matter of Schachner v Perales* (85 NY2d 316 [1995]), where the community spouse sought the contribution of the institutionalized spouse to pay voluntarily-assumed expenses for private secondary and college education, or *Matter of Gomprecht v Gomprecht* (86 NY2d 47 [1995]), where the community spouse had sufficient funds, even without the contribution of the institution-

alized spouse, to maintain her residence. Rather, the undisputed arithmetic here is that without a contribution from her institutionalized husband, Mrs. Balzarini will be unable to pay her reasonable housing and living expenses. That those expenses may be ordinary does not preclude them from being "exceptional" within the meaning of the applicable statute and regulations where, as here, they are both reasonable and extraordinary in light of the means that are available to satisfy them.

Accordingly, since the petitioner established exceptional circumstances with respect to the expenses incurred by the community spouse for housing, utilities, automobile, Medicare, food, clothing, medical care, and home maintenance, the determination by the DOH is not supported by substantial evidence and, therefore, it must be annulled to that extent (*see* CPLR 7803 [4]; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]). With respect to the credit card expenses claimed by the petitioner, however, the determination of the DSS is supported by substantial evidence. The expenses reflected on the credit card statements either duplicate expenses accounted for elsewhere in the budget, such as food or gasoline, or are either unexplained or no longer ongoing.

Thus, since the expenses that are properly considered exceed Mrs. Balzarini's income, the petition is granted, on the law, without costs or disbursements, to the extent that so much of the determination dated December 16, 2005, as affirmed so much of the determination dated May 26, 2005, as denied that portion of the petitioner's application which was to increase the minimum monthly maintenance needs allowance to include expenses for housing, utilities, automobile, Medicare, food, clothing, medical care, and home maintenance, is annulled, so much of the determination dated May 26, 2005, as denied that portion of the application is vacated, that portion of the application is granted to the extent that the matter is remitted to the DOH for the calculation of the increase in the minimum monthly maintenance needs allowance, the petition is otherwise denied, the determination dated December 16, 2005, is otherwise confirmed, and the proceeding is otherwise dismissed on the merits.

RITTER, MILLER and DICKERSON, JJ., concur.

Adjudged that the petition is granted, on the law, without costs or disbursements, to the extent that so much of the determination dated December 16, 2005, as affirmed so much of the

determination dated May 26, 2005, as denied that portion of petitioner's application which was to increase the minimum monthly maintenance needs allowance to include expenses for housing, utilities, automobile, Medicare, food, clothing, medical care, and home maintenance, is annulled, so much of the determination dated May 26, 2005, as denied that portion of the application is vacated, that portion of the application is granted to the extent that the matter is remitted to the New York State Department of Health for the calculation of the increase in the minimum monthly maintenance needs allowance, the petition is otherwise denied, the determination dated December 16, 2005, is otherwise confirmed, and the proceeding is otherwise dismissed on the merits.