DECISION
This matter is before the Court on appeal of right from a Department of Human Services ("DHS") decision. Plaintiff Robert Murphy ("Plaintiff"), who suffers from Multiple System Atrophy ("MSA"), applied for and was granted Medicaid assistance to cover the costs of his inpatient treatment at the West Shore Health Center ("WSHC").[1] As a condition for assistance, Medicaid requires that a certain portion of the applicant's income be diverted to the nursing facility. Unsatisfied with the determined allocation, the community spouse — Eileen Murphy — timely appealed the decision, arguing "extreme rare circumstances" have created a severe financial burden, thereby entitling her to a greater allocation of income. This matter was heard before the Superior Court on April 9, 2010, and is now ripe for decision.
 I Facts and Travel
Plaintiff Robert Murphy, age 68 at the time of appeal, suffered from Multiple System Atrophy, a rare and debilitating disorder. MSA causes cell damage in the areas *Page 2 
of the brain that control movement, balance, and automatic body functions, eventually leading to nervous system failure. It is characterized by symptoms such as fainting spells and incontinence, as well as loss of motor control leading to tremors, rigidity, and loss of muscle coordination. There is currently no known treatment to slow the progression of symptoms, and no known cure for the disorder. According to the National Institute of Neurological Disorders and Stroke, MSA typically ends in the patient's death within seven to ten years of diagnosis.
Mr. Murphy was diagnosed with MSA approximately seven years ago. After the diagnosis, his wife cared for him at home for approximately five years, but his condition deteriorated to such a degree that he needed full-time, professional care. He then moved to the West Shore Health Center in Warwick, Rhode Island, where he lived until his death.
Prior to entering WSHC, Mr. Murphy applied for Medicaid assistance so as to cover the tremendous monthly cost of treatment at the nursing facility. Pursuant to the Medicaid program, Mr. Murphy was required to pay almost all of his monthly income to WSHC, and Medicaid would cover the remaining cost. The amount Mr. Murphy was required to pay, or his "applied income," is calculated pursuant to state Medicaid guidelines. Applied income is the recipient's monthly gross income, less certain permissible deductions such as a personal needs deduction, a spousal allowance, medical insurance premiums, and an excess shelter allowance. Mrs. Murphy was not initially granted a spousal allowance deduction, however, due to an increase in the standard utility allowance effective July 1, 2008, she began receiving a deduction of $46.50 per month. The remainder of Mr. Murphy's monthly income was to be paid to WSHC. *Page 3 
Mrs. Murphy timely appealed the spousal allowance determination pursuant to the Department of Human Services ("DHS") Guidelines section 0392.15.30, which entitles either spouse to a hearing on the issue. Such a hearing was conducted on March 25, 2009, during which testimony was given by a DHS representative, Mrs. Murphy, as well as Mrs. Murphy's attorney. Mrs. Murphy testified that she is employed full-time with the Town of East Greenwich School Department as a secretary, earning $1432.52 per month. Her monthly expenses, which include, among other things, home owners' insurance, a home equity loan, property tax, sewer tax, various utilities, a car loan, cable television and internet service, medications, and home maintenance, total $2935.00 per month. With her husband's monthly income being diverted to the nursing facility, she is left with a monthly shortfall of $1502.48. As such, she has been unable to pay the required applied income to WSHC.
On April 21, 2009, DHS denied Mrs. Murphy's appeal on the basis that her husband's medical condition does not qualify as an extreme rare circumstance. DHS held that extreme rare circumstances refer only to financial matters, not extreme rare medical circumstances. Mrs. Murphy consequently appealed this decision to the Superior Court, and arguments were heard on April 9, 2010.
 II Standard of Review
Section 42-35-15 of the Administrative Procedures Act provides for an appeal of right to the Superior Court when all administrative remedies have been exhausted. Subsection (g) outlines the appropriate standard of review for such an appeal as follows:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the *Page 4 
decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The scope of Superior Court review of an agency decision is "an extension of the administrative process." Rhode IslandPublic Telecommunications Authority, 650 A.2d at 484. As such, "judicial review is restricted to questions that the agency itself might property entertain." Id. (citing EnvironmentalScientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)). "In essence, if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'" Auto BodyAssociation of Rhode Island v. State of Rhode Island Department ofBusiness Regulation et al., ___ A.2d ___,2010 WL 2223998 (R.I. June 4, 2010) (quoting Rhode IslandPublic Telecommunications Authority v. Rhode Island State LaborRelations Board, 650 A.2d 479, 485 (R.I. 1994)). "However, an administrative decision can be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Costa v. Registar of MotorVehicles, 542 A.2d 1307, 1309 (citing Newport Shipyard, Inc.v. Rhode Island Commission for Human Rights,484 A.2d 893 (R.I. 1984)).
 III Analysis
Medicaid is a state administered program which provides low-income individuals with financial assistance to cover the costs of health care. Although each state manages *Page 5 
its own individual program, Medicaid is jointly funded by the state and federal governments. Eligibility for Medicaid is need-based, but income is not the sole determining factor; states also consider factors such as age, disability, and immigration status.
Once a Medicaid recipient enters a nursing home, the program requires that almost all of the recipient's income be applied to the cost of the nursing home. This often leads to a difficult situation for the community spouse — if the greater part of the institutionalized spouse's income is diverted to the nursing home, the community spouse may find themselves virtually impoverished. In reaction to such a situation, Congress created the "Medicare Catastrophic Coverage Act" in 1988. 42 U.S.C. § 1396r-5. "Noting that `the leading cause of financial catastrophe among the elderly is the need for long-term care,' the legislation was expressly directed at ending the `pauperization' of the community spouse."Schachner v. Perales, 85 N.Y.2d 316, 320 (N.Y. 1995) (quoting HR Rep No. 100-105 [II], 100th Cong, 2d Sess, reprinted in 1988 US Code Cong Admin News, at 888). "The Act provided for an allowance to the community spouse paid out of the institutionalized spouse's income in order to bring the community spouse's income up to a minimum monthly needs allowance specified in the statute."Id.
Rhode Island enacted a provision almost identical to 42 U.S.C. § 1396r-5 within the Department of Human Services guidelines. Section 0392.15.30 of the guidelines provides:
 "If either the institutionalized spouse or the community spouse is dissatisfied with a determination of the community spouse monthly income allowance or the amount of income otherwise available to the community spouse, such spouse is entitled to a hearing. In addition, if either spouse establishes that due to extreme rare circumstances resulting in significant financial duress, the community spouse requires additional *Page 6 
income, the hearing officer may order an allocation to provide such additional income as is necessary." (Emphasis added).
Eileen Murphy petitioned the Rhode Island Department of Human Services for a hearing to decide whether, under § 0392.15.30, she was entitled to a greater allocation of income. The hearing was conducted on March 25, 2009, and DHS issued a decision on April 21, 2009, denying Mrs. Murphy's request. The issue before this Court is thus whether competent evidence exists on the record to uphold the DHS decision.
To succeed on a claim to increase monthly spousal allowance, Eileen Murphy must establish that "extreme rare circumstances" have lead to significant financial duress. What qualifies as "extreme rare circumstances" under the DHS guidelines is an issue of first impression in Rhode Island. The Centers for Medicare and Medicaid Services, a division of the U.S. Department of Health, published "The State Medicaid Manual" several years ago. In it, they give a "reasonable definition" of "exceptional circumstances resulting in extreme financial duress:"
 "Circumstances other than those taken into account in establishing maintenance standards for spouses. An example is incurment by community spouses for expenses for medical, remedial, and other support services which contribute to the ability of such spouses to maintain themselves in the community and in amounts that they could not be expected to pay from amounts already recognized for maintenance and/or amounts held in resources." Section 3710.1.
By this definition, the extreme rare circumstances must be something experienced by the community spouse, outside the already considered day-to-day expenses.
The Court of Appeals of New York considered this issue in 1995, in response to a request for an allowance increase from a family that argued private school tuition for their children qualified as an "exceptional circumstance" leading to significant financial duress. The Court held that: *Page 7 
 "Significant financial distress means exceptional expenses . . . [which] may be of a recurring nature or may represent major one time costs, and may include but are not limited to: recurring or extraordinary noncovered medical expenses [of the community spouse or family members]; amounts to preserve, maintain, or make major repairs on the homestead; and amounts necessary to preserve an income-producing asset." Schachner, 85 N.Y.2d at 321 (citing 18 NYCRR 360-4.10(a)(10)).
The Court concluded that "an increase is available only to alleviate true financial hardship that is thrust upon the community spouse by circumstances over which he or she has no control." Id.
Private school tuition simply did not qualify as such a hardship, and as such, the family's request was denied.
This Court is limited to a review of whether competent evidence exists on the record to support the agency's decision. The limited case law on this subject makes clear that the extreme rare circumstances are those which have occurred to the community spouse. As such, although this Court does not doubt that MSA is a rare and debilitating disease which necessitated Mr. Murphy's entrance into a nursing facility many years earlier than the average nursing home resident, Mr. Murphy's condition is simply not a factor that may be considered pursuant to a request for an increase in monthly allocation. In the case at bar, there is no doubt that Mrs. Murphy is experiencing financial hardship. However, the expenses presented to DHS as well as to this Court are, under DHS policy, ordinary and usual costs of living and usual personal expenses. Under the guidelines, an increase cannot be granted without the presence of some exceptional circumstance, which in Mrs. Murphy's case, has not been established. As such, this Court finds that DHS correctly denied Plaintiff's request and affirms the agency decision. *Page 8 
 IV Conclusion
For the aforementioned reasons, this Court hereby affirms the judgment of the Rhode Island Department of Human Services.
[1] Robert Murphy passed away on March 31, 2010. He is represented in this matter by his wife, Eileen Murphy, who is acting as his agent pursuant to a durable power of attorney.