Matter of Bertha M. v Pedro M. (2004 NY Slip Op 50918(U))

[*1]

Matter of Bertha M. v Pedro M.

2004 NY Slip Op 50918(U)

Decided on August 19, 2004

Family Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 19, 2004

Family Court, Queens County
In the Matter of a Proceeding for Support under article 4 of the Family Court Act BERTHA M., Petitioner,
against Pedro M. and Commissioner of the New York City Human Resources Administration Respondents.
F-5958/02

John M. Hunt, J.
I
The Commissioner of the New York City Human Resources Administration has filed
objections to an order entered by the Support Magistrate on December 12, 2003.[FN1] That order
directs that the respondent, a resident of a nursing home and recipient of benefits under the
Medicaid program, pay spousal support in the amount of $1,284.00 per month to the petitioner.
On March 24, 2004 counsel for the petitioner filed objections to the December 9, 2003
written decision and the December 12, 2003 support order entered by the Magistrate. Petitioner
filed objections to the Magistrates' order on March 29, 2004 claiming that the Magistrate's
order incorrectly failed to award her retroactive spousal support. By decision and order dated
[*2]
April 23, 2004, this Court denied petitioner's objections. Thereafter, on May 3, 2004 counsel for
the Human Resources Administration (Department of Social Services) filed objections to the
order of support claiming that the award of spousal support awarded by the Support Magistrate is
excessive. By order dated May 7, 2004 this Court directed that the respondent-Commissioner
have a transcription of the proceedings conducted before the Magistrate on November 6, 2003
produced and file the transcript with the Court (see, 22 NYCRR §205.39 [c]). The Court's May
7, 2004 order has been complied with and the Court has conducted a review of the record of
these proceedings, including the transcript and the written submissions of counsel.
The following facts appear in the record.
Petitioner, Bertha M. (born September 28, 1922) and respondent, Pedro M. (born March
12, 1923), were married in Cuba on March 31, 1946 and there is one adult child of their marriage
who has his own family and does not contribute to the financial support of his parents. The
parties emigrated to New York in 1957 and settled in Manhattan. During the course of the
marriage both parties were employed as teachers by the New York City Board of Education. In
1982 the parties purchased a cooperative apartment in Jackson Heights, Queens County, taking a
30 year mortgage to finance the apartment. Petitioner retired in 1991 after teaching for 25 years
and she continues to reside in the marital home. Mr. M. suffered the onset of dementia in
February of 2001 and petitioner was unable to maintain him in the marital home. Mr. M. was
admitted to the Bridge View Nursing Home, a skilled nursing facility, on or about April 16,
2001. On April 23, 2001 petitioner filed an application for Medicaid benefits on behalf of her
husband and the application was subsequently approved by the respondent local Commissioner
of Social Services.
Thereafter, on October 7, 2002, Mrs. M. filed this petition pursuant to Family Court
Act §412 seeking an award of spousal support from Mr. M., who continues to reside in the
nursing home. In support of her application, Mrs. M. alleges, in pertinent part, that respondent
is responsible for her support and that he has not provided for her support since the time he
entered the nursing home. Petitioner requested that the Court enter an order directing respondent
to pay spousal support in the amount of $5,698.95 per month. The Commissioner of the Human
Resources Administration filed an answer to the support petition alleging that the support
petition should be denied because "the pleadings fail to allege or demonstrate that the petitioner
has 'exceptional expenses' and 'significant financial distress' as required by both the Family
Court Act and State Medicaid Law."
A hearing upon the petition was conducted before the Support Magistrate on November
6, 2003. Petitioner appeared with counsel, the Commissioner appeared by counsel, and
respondent was represented by his court appointed Guardian ad Litem (see, Civil Practice Law
and Rules §1201). Respondent's Guardian ad Litem filed a written report and also provided a
statement for the record. According to the Guardian ad Litem, respondent is 80 years old and
is presently confined to the Bridge View Nursing Home which is located in Whitestone, New
York.. On Saturday, September 1, 2001 the Guardian ad Litem traveled from his office in
Jamaica to the Bridge View Nursing Home and he met with Mr. M. According to the Guardian,
Mr. M., who appears to have been diagnosed with dementia several years ago, was unable to tell
his Guardian exactly how long he has been institutionalized although Mr. M. expressed his
pleasure at having his wife visit him at the nursing home. According to the Guardian, the visits
[*3]
from petitioner were the highlight of Mr. M.'s daily existence. The Guardian noted his observation that it would be difficult for the petitioner, a now 81 year old person, to travel to the
nursing home by public transportation. While the Guardian traveled by city bus for 90 minutes,
he observed that a trip using the subway would require Mrs. M. to climb stairs to elevated
subway stations and then to transfer to a city bus to complete her trip, which might impair her
ability to make nearly daily visits which would have a negative impact on Mr. M. According to
respondent's Guardian, if Mrs. M. were to travel to the nursing home by taxicab on a daily basis
the total cost would probably not be less than the expenses that are associated with petitioner's
ownership and maintenance of the parties' automobile. The Guardian ad Litem had the
opportunity to review petitioner's financial disclosure documents and he did not find that her
needs were excessive and he did not object to an award of spousal support or the amount of
spousal support ordered by the Support Magistrate.
Petitioner, Bertha M., who was 80 years old at the time of the hearing, testified that
she and Mr. M. have been married since 1946 and that he has been confined at the nursing
home since February 2001. Petitioner retired in 1991 and presumably the respondent retired
at or near the same time. During their working lives, both had been employed as teachers by
the New York City Board of Education. According to the joint federal income tax returns filed
by the parties they had an adjusted gross income of $79,685.00 in 2001 and $73,488.00 in 2002.
With respect to their 2001 the parties received $46,432.00 in pension benefits and $31,884.00 in
social security benefits. In 2002 the parties received $44,791.00 in pension benefits and
$32,791.00 in social security benefits. In both years, the parties had no other significant sources
of income. Petitioner has continued to reside in the marital home since her husband entered the
[*4]
nursing home and has used her own pension and social security benefits as well as petitioner's
pension benefits to meet the expenses of maintaining the household.[FN2] Petitioner testified and the
Magistrate found that her basic monthly income is $2,500.00 which consists of pension benefits
in the amount of $1,338.00 and social security retirement benefits ("OASDI") in the amount of
$1,096.50 per month. The Magistrate did not include respondent's pension or his social security
benefits, which are used to reimburse the Department of Social Services for Mr. M.'s nursing
home care, in calculating petitioner's income. The Magistrate found that petitioner's expenses
consist of $1,299.92 per month mortgage payment for the marital residence, monthly
maintenance of $550.00 on that cooperative apartment, food of $300.00 to $350.00 per month,
electricity in the amount of $50.00 per month, cable television in the amount of $50.00 per
month, a cellular telephone bill of $48.00 per month, and union dues in the amount of $15.00 per
month which she must pay to maintain her benefits from the union welfare fund. Petitioner also
spends a modest amount on items needed for her husband's personal care, including the purchase
of "Depends" protective undergarments since his skin is reportedly irritated by the brand of
protective undergarments utilized at the nursing home. In addition, petitioner bears the cost of an
automobile jointly purchased by the parties and she pays a car loan in the amount of $530.00 per
[*5]
month and automobile insurance in the amount of $259.00 per month. Petitioner testified that she
uses the automobile for errands, medical appointments and for her daily visits to her husband at
the nursing home. According to the petitioner, if she did not have access to the car, it would cost
her $24.00 per day to travel to and from the nursing home by cab each day or approximately
$720.00 per month. Given her age, physical condition and the length of the trip, petitioner would
not use public transportation to travel from home to visit her husband. Petitioner testified that
she is also utilizing her assets to pay back taxes to the federal and state governments for income
tax liabilities which were incurred jointly by the parties. According to petitioner's testimony,
she and her husband owe back taxes to of $11,460.00 to the Internal Revenue Service and
$3,500.00 to the State of New York for the years 1995 through 2000 and she has been using her
own income to pay $129.00 per month to New York State as well as $200.00 per month to the
Internal Revenue Service pursuant to payment agreements she entered into with both taxing
authorities.
 II
Mr. M. has been confined in a nursing home for several years and he is receiving
Medicaid benefits, which is known as "Medical Assistance" in New York (Social Services Law,
Title 11). "Medicaid is a medical assistance program established by Title XIX of the Social
Security Act (42 USC §1396 et seq.) * * * . The program's purpose is to pay for necessary
medical care for those eligible individuals whose income and resources do not allow them to
meet the cost of their medical needs" (Matter of Golf v. New York State Department of Social
Services, 91 NY2d 656, 659; see, Matter of Cricchio v. Pennisi, 90 NY2d 296, 304-305; Matter
of Schachner v. Perales, 85 NY2d 316, 319). Prior to the 1988 adoption of the Federal Medicare
[*6]
Catastrophic Coverage Act ("MCCA") (42 USC §1396r-5, as amended by Pub L 100-360, 102 Stat. 754), "an institutionalized spouse could make income available to his or her noninstitution-
alized spouse (termed the community spouse) only up to the medical assistance eligibility level
or the public assistance standard of need, whichever was higher" (Matter of Schachner v.
Perales, at 319). In many instances this left the community spouse with insufficient income to
meet his or her living expenses (Matter of Schachner v. Perales, at 319; Matter of Gomprecht,
at 49; Matter of Golf, at 659). Therefore, Congress enacted the MCCA in order to address the
issue of spousal impoverishment when one spouse became confined to a nursing home and
eligible for Medicaid benefits.
Nevertheless, because the Medicaid program is intended to be the "payor of last resort"
(Matter of Calvanese v. Calvanese, 95 NY2d 111, 116 [internal citation omitted]; Matter of Gold
v. United Health Services Hospitals, Inc., 95 NY2d 683, 690-691), the MCCA was designed to
achieve two goals: "to protect community spouses from 'pauperization' while preventing
financially secure couples from obtaining Medicaid benefits" (Wisconsin Dept. of Health and
Family Services v. Blumer, 534 US 474, 480; Cleary v. Waldman, 167 F3d 801, 805, cert. denied
528 US 870 [3d Cir. 1999]). To that end, both the MCCA and the New York Medical Assistance
Plan contain provisions to ensure that a community spouse and any dependents of the
institutionalized spouse have sufficient income to meet their basic needs (42 USC §1396r-5 [d];
Social Services Law §366-c; Blumer, at 481). "Under the Spousal Impoverishment Provisions
of the MCCA, 42 USC §1396 et seq., several steps are taken when a couple applies for Medicaid
benefits to cover the care of a spouse who has been institutionalized. First, the state must
calculate the total value of the couple's resources and allocate a share of the resources to each
[*7]
spouse. The amount allocated to the community spouse is called the Community Spouse Resource Allowance ("CSRA"). This amount then need not be spent for the care of the
institutionalized spouse. The income generated from the CSRA, along with the community
spouse's other income, such as social security, makes up the community spouse's Minimum
Monthly Maintenance Needs Allowance ("MMMNA"). The MMMNA is a level of income
which has been estimated by the state to permit the noninstitutionalized spouse to live
independently in the community. " (Cleary, at 803), and where the CSRA available to the
community spouse is less than the applicable MMMNA then the income of the institutionalized
spouse may be transferred to raise the income of the community spouse up to the MMMNA (42
USC §1396r-5 [d] [1] [B]; Robbins v. DeBuono, 218 F3d 197, 199 [2d Cir. 2000]). In this case,
the record does not establish that the parties have any significant income producing assets that
could be attributed to the petitioner as part of the CSRA. The lack of any significant income
producing assets is also reflected in the "Institutionalized Spouse Budget Worksheet
(Assessment)" prepared by the respondent New York City Human Resources Administration on
June 7, 2001 which is approximately when the application for Medicaid was filed on behalf of
Mr. M.[FN3]
To prevent pauperization of the community spouse both the MCCA and the Social
Services Law provide for "an allowance to the community spouse paid out of the institution-
alized spouse's income in order to bring the community spouse's income up to a minimum
[*8]
monthly needs allowance specified in the statute" (Matter of Schachner v. Perales, at 320).
"This allowance, referred to as the community spouse monthly income allowance, is paid by the
institutionalized spouse to the community spouse, but only to the extent that the institutionalized
spouse possesses sufficient means and the community spouse's own income is below the
statutory minimum monthly needs allowance" (Matter of Gomprecht, at 50; Blumer, at 481-482; 
Robbins v. DeBuono, 218 F3d, at 199), which effectively reduces the amount of income that the
institutionalized spouse pays for his or her medical care and passes the cost to the public (Matter
of Schachner, at 320; Blumer, at 481-482). This basic level of support for the community spouse,
the MMMNA (42 USC §1396r-5 [d] [3]; Social Services Law §366-c [2] [h]) provides a basic
level of support for a community spouse. Pursuant to statute, "[t]he MMMNA is calculated by
multiplying the federal poverty level for a couple by a percentage set by the State. Since 1992,
that percentage must be at least 150%, but the resulting MMMNA may not exceed $1,500 per
month in 1988 dollars ($2,715 in 2001 dollars)" (Blumer, at 481; see, Golf v. Department of
Social Services, at 659).[FN4] In addition, the State is also required to provide an "excess shelter
allowance" to provide for unusually high rent or mortgage payments (42 USC §1396r-5 [d] [3]
[A] [ii], [d] [4]; Social Services Law §366-c [2] [k]), and that excess shelter allowance
constitutes part of the MMMNA [FN5].
[*9]
At the time that the hearing was held in this case, petitioner had a negligible CSRA,
and the MMMNA was set at $2,267.00 per month. Since the Magistrate determined that
petitioner's own income was $2,799.55 per month, she was not entitled to a deduction of income
from her husband, a "community spouse monthly income allowance" (42 USC §1396r-5 [d] [1]
[B]; Social Services Law §366-c [2] [g]), in order to raise her income up to the MMMNA
amount. Thus, in order for petitioner to obtain any portion of Mr. M.'s income for her own
support she was required to demonstrate the existence of "exceptional circumstances". In order
to establish the existence of exceptional circumstances, petitioner had the option of seeking an
administrative fair hearing from the Department of Social Services (see, Social Services Law
§§366-c [8] [a]; 400), or commencing a proceeding for spousal support before the Family Court
(Fam. Ct. Act §412).
In this case, petitioner commenced a proceeding for spousal support to establish her claim
of "exceptional circumstances" in order to obtain a community spouse monthly income allow-
ance, in the form of an order of spousal support, from her husband's income. While the Social
Security Act provides that "[i]f a court has entered an order against an institutionalized spouse,
the community spouse monthly income allowance for the spouse shall be not less than the
amount of the monthly income ordered" (42 USC §1396r-5 [d] [5]), the Court of Appeals has
held that a New York a court is not permitted to disregard the provisions of the MCCA and it is
now well-established that a court which determines a community spouse's application for
support from an institutionalized spouse must proceed in accordance with the provisions of
Social Services Law §366-c rather than the prior standard of living test provided for by Family
Court Act §412 (Matter of Gomprecht, 86 NY2d, at 51-52; Jenkins v. Fields, 1996 WL 221614, [*10]at 2-3 [SDNY, 1996]; Matter of Allen v. Allen, 236 AD2d 470, 471).
Therefore, the "exceptional circumstances" standard which applies in administrative fair
hearings must also be applied by the Family Court in a spousal support proceeding where the
community spouse has income in excess of the MMMNA "Social Services Law §366-c contem-
plates that an increase [in the MMMNA] is available only to alleviate a true financial hardship
that it thrust upon the community spouse by circumstances over which he or she has no control"
(Matter of Schachner, at 325; see, Matter of Gomprecht, at 51-52; Matter of Lanzi v. Lanzi, 298
AD2d 53, 55). Illustrative examples of "exceptional circumstances" or "significant financial
distress" are extraordinary medical expenses, funds needed to preserve, maintain or make major
repairs on the marital residence and amounts necessary to preserve an income-producing asset
(Matter of Schachner, at 325; Jenkins, at 3; 18 NYCRR §360-4.10 [a] [10]).
Here the Support Magistrate determined that the petitioner established the existence of
exceptional circumstances and significant financial distress. The evidence establishes that the
petitioner is now responsible for payment of the entire mortgage, maintenance and insurance
expenses on the marital home which she and respondent jointly purchased in 1982. Petitioner
is entitled to maintain the marital home which also constitutes a potential and non-liquid income-
producing asset since each mortgage payment increases the equity she and respondent have in the
apartment. Petitioner also has personal medical expenses including medical and dental care and
prescription medications which total approximately $300.00 per month and she spends
approximately $100.00 per month to purchase necessary and incidental personal items for her
husband, including Depends undergarments and replacement clothing, neither of which are
provided to patients by the nursing home. Petitioner also uses her own income to make monthly
[*11]
payments of tax delinquencies to both the Internal Revenue Service and New York State. These
payments, which total $329.00 per month, represent a tax liability which was jointly incurred by
petitioner and respondent. She is obligated to repay these taxes and a part of Mr. M.'s income
should be available to her to assist in meeting that obligation. Finally, while petitioner incurs
somewhat large expenses associated with her automobile, including a monthly loan payment of
$530.00 and insurance of $259.00 per month, both petitioner and respondent's Guardian ad
Litem testified that she makes daily trips to visit her husband at the nursing home and those trips
are clearly in the best interests of both spouses. While public transportation is available, it is
impracticable with respect to this petitioner who is now 81 years of age. In addition, the evidence
establishes that were petitioner to make daily round trips from home to the nursing home by cab,
the cost would exceed the monthly expenses she incurs for the automobile. Additionally, It bears
noting that petitioner declared bankruptcy in 1997 and that has impaired her ability to refinance
the mortgage on the cooperative apartment or to refinance the automobile loan and she has been
unable to negotiate lower monthly tax payments with the tax authorities to date.
Therefore, considering all of the evidence and the specific findings made by the Support
Magistrate, including the fact that the parties do not own any significant income-producing
assets, and given that the core purpose of the MCCA is to protect the community spouse from
pauperization (Blumer, at 480; Robbins, at 199; Matter of Schachner, at 659), this Court is not
persuaded that there was insufficient evidence to support the Magistrate's determination that
there are exceptional circumstances within the meaning of Social Services Law §366-c and 18
NYCRR §360-4.10 (a) (10). Petitioner's circumstances differ significantly from those where the
[*12]
community spouse has income or resources in excess of the MMMNA with which to maintain
herself (e.g., Matter of Allen v. Allen, 236 AD2d 470 [court finds no significant financial distress
where community spouse's own income exceeds the MMMNA and she incurred expenses in
connection with a second residence and contributed part of her own income to fund an annuity]).
Accordingly, the Court is not inclined to disturb the Magistrate's conclusion that the evidence
justified an award of spousal support in excess of the MMMNA (Matter of White v. White, 229
AD2d 296).
It is therefore,
ORDERED, that the objections filed by the respondent Commissioner of the Human
Resources Administration are denied for the reasons stated herein.
This constitutes the order of the Court.
E N T E R:
_________________________________
JOHN M. HUNT
Judge of the Family Court
Dated: Jamaica, New York
 August 19, 2004
Footnotes

Footnote 1:The Magistrate issued a decision upon trial on December 9, 2003 and she signed an
order of support effectuating that decision on December 12, 2003.

Footnote 2:Petitioner conceded that she has been utilizing respondent's monthly pension benefits
of $1,534.00 per month to meet her expenses since the time that he entered the nursing home,
although she admitted that she was aware that such monies should have been turned over to the
nursing home to pay for her husband's care. When petitioner filed objections to the Magistrate's
support order arguing that she should have been awarded retroactive spousal support, this Court
found that claim to be without merit in a written decision dated April 23, 2004. Because Mr. M.'s pension benefits had legally been assigned to the Department of Social Service and because the monthly pension benefits exceeded the amount of spousal support awarded by the Support Magistrate, an award of retroactive support would have constituted a double payment of spousal support to petitioner.

Footnote 3:This assessment document, which was appended to the Commissioner's answer to the
petition for spousal support, indicates that the only asset other than the parties' cooperative
apartment and automobile, is a modest checking account. Indeed, due to the fact that there are
no significant income producing assets, the Department did not calculate a CRSA for Mrs. M.
(see, Respondent-City's Verified Answer, January 7, 2003, Exhibit 1).

Footnote 4:New York Social Services Law §366-c (2) (h) defines the MMMNA as "an amount equal to one-twelfth of the applicable percentage of the federal income official poverty line for
a family of two, plus an excess shelter allowance * * * ."

Footnote 5:New York Social Services Law §366-c [2] [k] defines "excess shelter allowance" as
"the amount by which the community spouse's rent, mortgage, or condominium or cooperative
maintenance fees, taxes and insurance, and utilities exceed thirty percent of one-twelfth of the
applicable percentage of the applicable percentage of the federal income official poverty line for
two persons."