[944 NE2d 1113, 919 NYS2d 474]

In the Matter of FRANCES BALZARINI, as Administrator of the Estate of JOHN BALZARINI, Deceased, Respondent, v SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Appellants.

Argued January 11, 2011; decided February 15, 2011

136

**POINTS OF COUNSEL**

*Andrew M. Cuomo, Attorney General*, New York City (*Steven C. Wu, Barbara D. Underwood, Richard Dearing* and *Karen Schoen* of counsel), for New York State Department of Health, appellant. The Department of Health reasonably determined

that Frances Balzarini did not establish "exceptional circumstances" justifying an increase in the statutory allowance. (*Matter of Tomeck*, 8 NY3d 724; *511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144; *Graubard Mollen Dannett & Horowitz v Moskovitz*, 86 NY2d 112; *Hecht v City of New York*, 60 NY2d 57; *Matter of Transitional Servs. of N.Y. for Long Is., Inc. v New York State Off. of Mental Health*, 13 NY3d 801; *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475; *Matter of Schachner v Perales*, 85 NY2d 316; *Matter of Brown v Wing*, 93 NY2d 517; *Cricchio v Pennisi*, 90 NY2d 296; *Matter of White v White*, 229 AD2d 296.)

*Christine Malafi, County Attorney*, Central Islip (*Christopher A. Jeffreys* and *Karin A. Bohrer* of counsel), for Suffolk County Department of Social Services, appellant. I. The Department of Health's determination that ordinary living expenses do not qualify as "exceptional circumstances" is rational and supported by the plain language of the statute and regulations. (*Matter of Berenhaus v Ward*, 70 NY2d 436; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326; *Matter of Kelly v Safir*, 96 NY2d 32; *Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227; *Matter of Albano v Board of Trustees of N.Y. City Fire Dept., Art. II Pension Fund*, 98 NY2d 548; *Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359; *Seenaraine v Securitas Sec. Servs. USA, Inc.*, 37 AD3d 700, 9 NY3d 813; *Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health*, 5 NY3d 499; *Matter of Orens v Novello*, 99 NY2d 180.) II. The Medicare Catastrophic Coverage Act and related federal guidelines do not support the Second Department's determination that ordinary living expenses can qualify as exceptional circumstances resulting in significant financial distress. (*Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 US 837; *Morton v Ruiz*, 415 US 199; *Arkansas Dept. of Health & Human Servs. v Ahlborn*, 547 US 268; *Skidmore v Swift & Co.*, 323 US 134; *Wong v Doar*, 571 F3d 247; *Estate of Landers v Leavitt*, 545 F3d 98; *Community Health Ctr. v Wilson-Coker*, 311 F3d 132; *Morenz v Wilson-Coker*, 415 F3d 230; *Wisconsin Dept. of Health & Family Servs. v Blumer*, 534 US 473; *Rabin v Wilson-Coker*, 362 F3d 190.) III. The holdings of this Court support the interpretation of "exceptional circumstances" as being circumstances beyond the community spouse's control. (*Matter of Gomprecht v Gomprecht*, 86 NY2d 47; *Matter of Schachner v Perales*, 85 NY2d 316; *Matter of Tomeck*, 8 NY3d 724.)

*Lewis C. Edelstein*, Garden City and *Gary S. Josephs*, Setauket, for respondent. I. The Appellate Division, Second Department's decision should be affirmed. (*Matter of Schachner v Perales*, 85 NY2d 316; *Matter of Golf v New York State Dept. of Social Servs.*, 91 NY2d 656; *Matter of White v White*, 229 AD2d 296; *Matter of Bertha M. v Pedro M.*, 4 Misc 3d 1017[A], 2004 NY Slip Op 50918[U]; *Matter of Gomprecht v Gomprecht*, 86 NY2d 47; *Calvanese v Calvanese*, 93 NY2d 111; W*isconsin Dept. of Health & Family Servs. v Blumer*, 534 US 473; *Matter of Shah [Helen Hayes Hosp.]*, 257 AD2d 275; *Matter of Tomeck*, 8 NY3d 724; *Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 US 837.) II. The Appellate Division, Second Department used the correct standard of judicial review in making its determination that the Department of Health's determination in the fair hearing lacked a rational basis and was not supported by substantial evidence. (*NLRB v Food & Commercial Workers*, 484 US 112; *United States v American Trucking Assns., Inc.*, 310 US 534; *Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359; *Seenaraine v Securitas Sec. Servs. USA, Inc.*, 37 AD3d 700, 9 NY3d 813; *Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health*, 5 NY3d 499; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Matter of McCormack v National City Bank of N.Y.*, 303 NY 5; *Matter of Adams [Government Empls. Ins. Co.]*, 52 AD2d 118.) III. The Second Department should be affirmed in that a "sufficient—but not excessive—amount of income and resources" under Social Services Law § 366-c includes support to pay necessary and reasonable expenses of the community spouse. (*Matter of Gomprecht v Gomprecht*, 86 NY2d 47; *Matter of Albany County Dept. of Social Servs. v Englehardt*, 124 AD2d 140; *Matter of Lopez v Commissioner of N.Y. State Dept. of Health*, 42 AD3d 638; *Matter of Allen v Allen*, 236 AD2d 470.)

**OPINION OF THE COURT**

READ, J.

On this appeal, we hold that "exceptional circumstances" causing "significant financial distress" within the meaning of the joint federal-state Medicaid program do not encompass everyday living expenses in excess of the "minimum monthly

maintenance needs allowance" (MMMNA), an amount deemed sufficient by Congress for an individual to live in the community after his or her spouse residing in a nursing home becomes eligible for Medicaid.

## I.

Upon entering a nursing home in March 2005, John Balzarini (the husband; in Medicaid parlance, the institutionalized spouse) applied to the Suffolk County Department of Social Services (DSS) for Medicaid benefits. The husband's total monthly income was $2,542.67, consisting of Social Security and a private pension; when making the Medicaid-eligibility determination, DSS calculated that $2,414.47 of this monthly income was available to pay for the husband's nursing home expenses, which were then $227.37 per day at the Medicaid rate, or approximately $6,800 per month. The husband's wife, Frances (the wife; in Medicaid parlance, the community spouse) submitted a spousal refusal letter to DSS (see Matter of Tomeck, 8 NY3d 724, 729-730 [2007]); she had a monthly income of $2,444.77, also from Social Security and a private pension. Since the wife's income exceeded $2,378, the MMMNA for 2005, DSS did not allocate any of the husband's available monthly income for the wife's support. Instead, as of May 1, 2005, the effective date of the husband's Medicaid coverage, his entire available monthly income of $2,414.47 was paid over to the nursing home, while Medicaid took care of the balance of his monthly nursing home costs of roughly $4,400 ($6,800 - $2,414.47 = $4,385.53).

The husband exercised his right to contest DSS's determination in a fair hearing conducted by an administrative law judge on behalf of the New York State Department of Health (DOH) (see Social Services Law § 22; 18 NYCRR 358-2.30 [b]; 358-3.1 [g] [1]).[1] He argued that "exceptional circumstances" resulted in the wife's "significant financial distress" at the level of the MMMNA, justifying an award increasing her monthly income allowance (see 42 USC § 1396r-5 [e] [2] [B]; Social Services Law § 366-c [8] [b]). At the hearing held on December 5, 2005, the

---

**1.** Effective October 1, 1996, DOH replaced the former New York State Department of Social Services as the agency responsible for administering the Medicaid program at the state level (see L 1996, ch 474, §§ 233-248; see also Social Services Law § 363-a [1]; Public Health Law § 201 [1] [v]).

husband's representatives[2] sought to prove that the wife incurred monthly living expenses totaling about $4,800, including mortgage payments, common charges, homeowners' insurance and real property taxes for the condominium jointly owned by the husband and wife, where the wife still resided; transportation costs (car loan payments and bills for insurance and gasoline); food, clothing, prescription drugs and utility bills; and about $1,500 for a minimum monthly payment on credit card debt of between $25,000 and $30,000, most of which was incurred before the husband entered the nursing home.

In a decision dated December 16, 2005, DOH affirmed DSS's determination to limit the wife's income to the MMMNA. The decision cited the legislative history of the Medicare Catastrophic Coverage Act of 1988 (MCCA) (42 USC § 1396r-5), which suggested that " 'exceptional circumstances' are those which are not ordinary and which arise out of an emergency or unanticipated need" (emphasis omitted); and noted that pursuant to 18 NYCRR 360-4.10 (a) (10), " 'financial distress' may result from recurring or extraordinary non-covered medical expenses, amounts to preserve, maintain, or make major repairs to the homestead, and amounts necessary to preserve an income producing asset." DOH concluded that the evidence presented at the fair hearing failed to fulfill these legal criteria because the wife merely established that her actual living expenses exceeded the MMMNA; "these costs constitute expenses that are to be absorbed by the MMMNA"; and "[b]y their very nature, exceptional circumstances do not include usual household monthly expenses." The decision also noted that the wife "conceded" that the credit card balances did not reflect expenses for major repairs to the homestead or catastrophic events, and presented "no bills or documentation of unpaid recurring bills" or "verification of any medical costs" that she had incurred.

In April 2006, the husband brought this CPLR article 78 proceeding (now pursued by the wife as administrator of the husband's estate)[3] to contest DOH's decision upholding DSS's determination. He asked Supreme Court to "rais[e] the MMMNA . . . to include the unsecured debt of the [institutionalized spouse] and the community spouse"; specifically, the

---

**2.** The fair hearing took place without the husband's participation. Instead, he was represented by the wife and their son, an accountant, who both testified about the family's finances, as well as by counsel.

**3.** The husband apparently died in March 2009.

husband claimed that the MMMNA should be increased by $2,536.67 a month. In July 2006, Supreme Court transferred the matter to the Appellate Division (*see* CPLR 7804 [g]).

In a decision issued in September 2008, the Appellate Division concluded that "[w]ith the exception of the credit card expenses," where DOH's determination was supported by substantial evidence, the wife's "recurring monthly expenses" were "all necessities of daily living" (55 AD3d 187, 194 [2d Dept 2008]). The court further opined that because "reasonable, ordinary expenses can be a sufficient basis upon which additional income of the institutionalized spouse may be made available to the community spouse" (*id.* at 191), the husband had "established exceptional circumstances with respect to the [wife's] expenses . . . for housing, utilities, automobile, Medicare, food, clothing, medical care, and home maintenance," and so DOH's determination was "not supported by substantial evidence and[ ] . . . must be annulled to that extent" (*id.* at 195). The Appellate Division accordingly granted the petition in part "since the expenses that are properly considered exceed [the wife's] income"; and remitted the matter to DOH to calculate an increase in the MMMNA to take into account the wife's expenses in the specified categories (*id.*). In January 2009, the court granted DSS and DOH leave to appeal, certifying to us the question of whether its opinion and judgment had been properly made.[4]

## II.

The spousal impoverishment provisions of the MCCA form "a complex set of standards . . . designed to insure that the community spouse retains necessary, but not excessive, income and assets, which do not need to be depleted to make the institutionalized spouse eligible for Medicaid" (*Tomeck*, 8 NY3d at 728). In so doing, Congress corrected "a perceived flaw in the Medicaid program" by eliminating the risk that a community spouse would be reduced to penury (*Matter of Golf v New York State Dept. of Social Servs.*, 91 NY2d 656, 659 [1998]; *see also Matter of Schachner v Perales*, 85 NY2d 316, 319-320 [1995] [discussing prior law]). New York enacted conforming legislation (Social Services Law § 366-c), and the former New York State Department

---

**4.** The husband did not seek to cross-appeal; therefore, so much of the Appellate Division's opinion and judgment as affirmed DOH's decision regarding credit card debt is beyond our review (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151 n 3 [2002]).

of Social Services issued implementing regulations (18 NYCRR 360-4.10).

The MCCA requires each state to establish the MMMNA for the community spouse at a level equal to or exceeding 150% of one-twelfth of the federal income official poverty line for a family of two plus an excess shelter allowance for unusually high housing expenses,[5] subject to a cap of $1,500 per month in 1988 dollars (*see* 42 USC § 1396r-5 [d] [3], [4]). The federal income official poverty line is revised each year, and the cap is indexed to the consumer price index for all urban consumers (*see* 42 USC § 1396r-5 [d] [3] [A] [i]; [g]). New York has set the MMMNA equal to the statutory cap (*see* Social Services Law § 366-c [2] [h]); therefore, the MMMNA in New York is the maximum permitted under federal law.

If the community spouse's income falls below the MMMNA, the institutionalized spouse makes up the difference, assuming he or she possesses sufficient income to do so (*see* 42 USC § 1396r-5 [d] [1] [B]; [2]; Social Services Law § 366-c [2] [g]; [4] [b] [providing for deduction for this purpose from institutionalized spouse's monthly income]). Further, if "either . . . spouse establishes that the community spouse needs income, above the level otherwise provided by the [MMMNA], due to exceptional circumstances resulting in significant financial duress," then "an amount adequate to provide such additional income as is necessary" shall be substituted for the MMMNA (42 USC 1396r-5 [e] [2] [B]). Concomitantly, Social Services Law § 366-c (8) (b) provides that

> "[i]f either spouse establishes that the community spouse needs income above the level established by the social services district as the [MMMNA], based upon exceptional circumstances which result in significant financial distress (as defined by the commissioner in regulations), [DOH] shall substitute an amount adequate to provide additional necessary income from the income otherwise available to the institutionalized spouse."

---

5. The "excess shelter allowance" of a community spouse is equal to the community spouse's expenses for rent or mortgage payments, taxes and insurance and, in the case of a condominium or cooperative, required maintenance charges, as well as a utility allowance, to the extent that these housing-related expenses exceed 30% of 150% of one-twelfth of the federal income official poverty line for a family of two (*see* 42 USC § 1396r-5 [d] [4]; Social Services Law § 366-c [2] [k]).

The implementing regulations, in turn, define "significant financial distress" as

"exceptional expenses which the community spouse cannot be expected to meet from the [MMMNA] or from amounts held in resources. Such expenses may be of a recurring nature or may represent major one time costs, and may include but are not limited to: recurring or extraordinary noncovered medical expenses; amounts to preserve, maintain or make major repairs on the homestead; and amounts necessary to preserve an income-producing asset" (18 NYCRR 360-4.10 [a] [10]).

"Exceptional" means "out of the ordinary" or "uncommon" or "rare" (Webster's Third New International Dictionary, Unabridged [Merriam-Webster 2002], available at http://unabridged.merriam-webster.com). As we explained in *Schachner*, section 366-c of the Social Services Law therefore "contemplates that an increase [in the MMMNA] is available only to alleviate true financial hardship that is *thrust upon the community spouse by circumstances over which he or she has no control*, as exemplified by the circumstances enumerated in 18 NYCRR 360-4.10 (a) (10)" (*Schachner*, 85 NY2d at 325 [emphasis added]).

Here, by contrast, the wife seeks an increased award to pay for everyday living expenses. But Congress created the MMMNA precisely to cover just such ordinary and therefore, by definition, *non*-exceptional items. Indeed, the Centers for Medicare and Medicaid Services, the federal office that oversees Medicaid, has suggested that a reasonable definition for "exceptional circumstances resulting in extreme financial duress" is "[c]ircumstances *other than* those taken into account in establishing maintenance standards for spouses" (*see* Centers for Medicare and Medicaid Services, State Medicaid Manual § 3710.1 [10-89] [Rev 39] [emphasis added], available at http://www.cms.hhs.gov/Manuals/PBM/itemdetail.asp?itemID=CMS021927).

Plainly stated, the spousal impoverishment provisions are not meant to enable the community spouse "to maintain [his or] her prior life-style and have the public subsidize it"—i.e., Medicaid dollars would have to make up for any monies diverted from the institutionalized spouse's medical care to the community spouse (*Matter of Gomprecht v Gomprecht*, 86 NY2d 47, 52 [1995] [Family Court may not make an award in an amount greater than MMMNA to community spouse absent showing of

exceptional circumstances within meaning of Social Services Law § 366-c]). Instead, "the narrow purpose of the legislation providing for the [MMMNA was] to protect the community spouse from financial disaster when the primary income-providing spouse [became] institutionalized" (*Schachner*, 85 NY2d at 323). Congress established the MMMNA at an amount it deemed sufficient to achieve this narrow purpose. Thus, the spousal impoverishment provisions do not guarantee a community spouse the same standard of living—even if reasonable rather than lavish by some lights—that he or she enjoyed before the institutionalized spouse entered a nursing home. Congress itself has decided what is a reasonable basic living allowance for the community spouse: the MMMNA. The trade-off for a married couple, of course, is that the institutionalized spouse's costly nursing home care is heavily subsidized by the taxpayer, as happened here (*see supra* at 139).

Consequently, substantial evidence supports DOH's determination denying the wife an increase in the MMMNA. All the wife attempted to show at the fair hearing was that she could not maintain her existing lifestyle if all of the husband's income was applied toward his medical care. She therefore did not demonstrate that her "significant financial distress" was caused by "exceptional circumstances" within the meaning of the spousal impoverishment provisions of federal and state law.

Accordingly, the order of the Appellate Division insofar as appealed from should be reversed, with costs; the petition dismissed; and the certified question answered in the negative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order, insofar as appealed from, reversed, etc.