**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

JUN 05 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re: INTERNATIONAL AIR
TRANSPORTATION SURCHARGE
ANTITRUST LITIGATION,

STEPHEN COLLINS; et al.,

Plaintiffs,

And

CARNIVAL PLC,

Claimant - Appellant,

v.

UNITED AIRLINES, INC.; et al.,
ASIANA AIRLINES, INC.,

Defendants,

And

VIRGIN ATLANTIC AIRWAYS, LTD.;
et al.,

Defendants - Appellees.

No. 12-15215

D.C. No. 3:06-md-01793-CRB

MEMORANDUM[*]

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted May 13, 2014
San Francisco, California

Before: RIPPLE,** SILVERMAN, and GOULD, Circuit Judges.

Carnival PLC ("Carnival") challenges the district court's denial of its motion to enforce settlement agreements. For the reasons set forth in the following order, we affirm the district court's judgment.

**I**

Carnival, a provider of cruise vacations, offers, among other options, vacation packages that include air travel to and from port cities. Carnival is able to offer all-inclusive packages because it has contracted with British Airways PLC ("BA") and Virgin Atlantic Airways, Ltd. ("VAA") (collectively "the Airlines"). Specifically, an Inclusive Tours Contract ("ITC") allows Carnival to reserve fares from BA for sale to Carnival's customers as part of a vacation package. Under the ITC, Carnival is liable for all taxes, fees and charges, and it must use BA's electronic reservation system for booking tickets–the same system employed by

---

** The Honorable Kenneth F. Ripple, Senior Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

2

travel agents. Under a Commitment Agreement, Carnival may request an allocation of seats for its customers on certain BA flights. Carnival may cancel all or some of the seat allocation up to a certain date; after that date, it becomes liable to BA for a penalty based on the number of seats held. When Carnival reserves a seat, it must do so in the name of an individual passenger; once a passenger ticket has issued, the name on that ticket may not be changed. A Net Fare Agreement governs Carnival's relationship with VAA and, similar to the ITC, makes seats available to Carnival for use in its packaged vacations.

The present dispute between Carnival and the Airlines arose as a result of a class action lawsuit brought by customers who had purchased tickets for air travel from BA, VAA and other airlines. The plaintiffs alleged that the airlines had conspired to restrain trade by agreeing to fix fuel surcharges on long-haul flights. They sought relief under United States antitrust law and under the competition laws of the United Kingdom and of the European Union.

In February 2008, the plaintiffs entered into settlement agreements with BA and VAA ("Settlement Agreements"). The Settlement Agreements define the U.K. Settlement Class as:

> All Persons to whom, in the period beginning on August 11, 2004 and ending on March 23, 2006, [BA or VAA] sold, in the United Kingdom, at least one coupon for passenger air travel on a flight

operated by [BA or VAA] and as to which the long-haul fuel surcharge was paid and not refunded in whole as of the date of the Settlement Agreement ("U.K. Qualifying Coupon"), but excluding the officers, directors, employees, counsel and agents of [BA or VAA], and all government entities.

ER 118, 149.[1]

During the period covered by the Settlement Agreements, Carnival incorporated over 100,000 tickets from BA and VAA into travel packages. Following the entry of the Settlement Agreements, Carnival filed a claim for reimbursement from the U.K. Settlement Fund for approximately 116,000 tickets that were issued to its cruise customers.

The Settlement Administrator denied Carnival's claim on the ground that the parties' contracts and course of dealing demonstrate that Carnival issued tickets as an agent for the airlines and that the passengers, not Carnival, paid the fares and surcharges. Carnival requested reconsideration, which the Settlement Administrator denied. Carnival then moved in district court for an order to enforce the Settlement Agreements.

The district court denied Carnival's motion. The court observed that, "[t]o be a class member under the settlement agreement, one has to be a person to whom

---

[1] This appeal concerns Carnival's attempt to be classified as a member of the *U.K. Settlement Class* only.

BA or VAA sold a coupon for passenger air travel and to which the fuel surcharge was paid and not refunded." *Id.* at 4. The district court believed that several factors led to the conclusion that Carnival did not "actually purchase[] the tickets" used by its customers, but, instead, was "a conduit" through which its passengers purchased tickets from VAA and BA. *Id.* at 5. Specifically, the court observed that (1) when Carnival booked a ticket with VAA, it had to provide the name of the passenger; (2) it used a system employed by travel agents and other tour operators; (3) it did not have to pay for the ticket until it issued; and (4) it could not switch the name of the passenger on a purchased ticket. Similarly, turning to the relationship between Carnival and BA, Carnival (1) "use[d] the CRS/GDS system, through which BA gives agents access to its inventory, including flights, fares and availability," and (2) it was required to "provide a passenger's name at booking, and [wa]s not required to remit payment until a ticket [wa]s issued." *Id.* at 6.

The court also noted that, under Carnival's contracts with the Airlines, "it was *never* responsible for paying fuel surcharges." *Id.* at 8. The court explained that

> [f]uel charges were only levied on tickets that were issued to individual passengers for seats actually flown by the ticketed passengers, and therefore were only paid for by the individual passengers, not by Carnival. If a ticket was not issued to an individual passenger, at most Carnival had to pay a fixed fee to the airlines. *Fuel*

5

*surcharges were not assessed* if no ticket was issued to an individual passenger.

*Id.* (citations omitted) (internal quotation marks omitted). According to the court, "[t]his [wa]s the most significant fact weighing against Carnival's inclusion in the class. . . . That Carnival was never on the hook for the fuel surcharge is consistent with it only purchasing airline tickets on behalf of its passengers, and inconsistent with its being a purchaser entitled to recovery." *Id.* The court, therefore, determined that Carnival was not a class member and denied its motion to enforce the Settlement Agreements.[2]

## II

---

[2] The district court's jurisdiction over the underlying antitrust action was premised on federal question jurisdiction. *See* 28 U.S.C. § 1331. When the parties entered into the Settlement Agreements, the district court incorporated the terms of those agreements into its dismissal order and also retained jurisdiction over the enforcement of those agreements. The district court, therefore, had jurisdiction over Carnival's enforcement action. *See Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007) .

This court has jurisdiction over the district court's denial of enforcement pursuant to 28 U.S.C. § 1291 because the district court's order denying enforcement ended the litigation between Carnival, as plaintiff, and BA and VAA, as defendants, on the merits. *See Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 813 (9th Cir. 2012) (explaining that "[a] final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" (internal quotation marks omitted)).

"Interpretation of a settlement agreement is a question of law subject to de novo review, but we defer to any factual findings made by the district court in interpreting the settlement agreement unless they are clearly erroneous." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1261 (9th Cir. 2010) (citation omitted). According to New York law, which governs the interpretation of the Settlement Agreements, "[a] written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties," *Brad H. v. City of N.Y.*, 951 N.E.2d 743, 746 (N.Y. 2011), and courts may refer to dictionary definitions in discerning a term's plain meaning, *see, e.g.*, *Balzarini v. Suffolk Cnty. Dep't of Soc. Servs.*, 944 N.E.2d 1113, 1118 (N.Y. 2011) (employing dictionary definition of "exceptional").

Here, the operative provision is the definition of the U.K. Settlement Class, which reads:

> All persons to whom[] . . . [BA or VAA] sold, in the United Kingdom, at least one coupon for passenger air travel on a flight operated by [BA or VAA] and as to which the long-haul fuel charge was paid and not refunded in whole as of the date of the Settlement Agreement . . . .

ER 118, 149. According to the dictionary definition, "to sell" is "[t]o give up (property) to another for money or other valuable consideration: hand over or transfer title (as to goods or real estate) for a price." Webster's Third New

7

International Dictionary 2061 (1981). Employing this definition, we agree with the district court that the Airlines sold the tickets, not to Carnival, but to its passengers. The facts show that a ticket on either airline must be booked in the name of a passenger, and no payment is due until the ticket issues. When the ticket is issued, it is issued in the name of specific passenger, and the name on the ticket cannot be changed. In sum, the contracts between Carnival and the Airlines establish that the Airlines give up the property–here, the coupon for the long-haul flight–to the passenger, not to Carnival. The property is transferred to the passenger at the time of booking, and it is this action that prompts the obligation to remit payment. Carnival facilitates this exchange between the Airlines and its customers, but it is not the party to whom the ticket is sold.[3]

Carnival, however, believes that this interpretation cannot be squared with the language of the contract. Carnival first maintains that the district court "rewrote the Settlement Agreements to effectively limit the U.K. Settlement Class to passengers–those who had purchased the tickets 'for [themselves].'" Appellant's Br. 26 (alteration in original). We disagree. The analysis employed by the district

_____

[3] Carnival suggests a slightly different definition of sell: "'to transfer (goods) or render (services) for another in exchange for money.'" Appellant's Br. 25 (quoting Random House Webster's Unabridged Dictionary 1739 (2d ed. 2001)). Carnival's definition does not change the analysis: The Airlines transferred the tickets to the customer, not to Carnival.

court merely answers this fundamental question: Between which parties does the exchange of property actually occur? Here, it is clear that, under the course of conduct contemplated by the agreements, the Airlines surrender the property to Carnival's customers, and Carnival's customers pay for their tickets, including any fuel charges.[4]

Alternatively, Carnival submits that the interpretation is at odds with the "indirect purchaser" rule under antitrust law, which "bars suits for antitrust damages by customers who do not buy directly from a defendant." *Somers v. Apple, Inc.*, 729 F.3d 953, 961 (9th Cir. 2013). According to Carnival, the Settlement Agreements make clear that their purpose is to settle claims brought under United States antitrust law. Because it is the "direct purchaser" of tickets from the Airlines, continues Carnival, only it, and not its customers, has standing to seek damages for antitrust violations. Consequently, only it should be considered a member of the U.K. Settlement Class.

---

[4] The Airlines seek to characterize the district court's determination that the tickets were sold to Carnival's customers, not Carnival, as a factual finding, which we review only for clear error. Carnival urges that this determination is a matter of contract interpretation, subject to de novo review. We need not decide whether this determination falls neatly into either category because, regardless of the standard applied, we believe the district court's conclusion is the correct one.

We do not believe, however, that the Settlement Agreements incorporate the "indirect purchaser" rule. Even if we were to assume that the customers were "indirect purchasers" for purposes of the Sherman Act count (an issue we need not decide), the Settlement Agreements do not reference only possible violations of the Sherman Act, but also an investigation by the United Kingdom's Office of Fair Trade and violations of the United Kingdom Competition Act. ER 112, 143. As noted by the Airlines, the U.K. and E.U. have not adopted the strict "indirect purchaser" rule applicable in U.S. antitrust cases. *See* Joined Cases 295-298/04, *Manfredi v. Lloyd Adriatico Assicurazioni SpA*, 2006 E.C.R. I-6619, ¶ 61 ("It follows that any individual can claim compensation for the harm suffered where there is a causal relationship between that harm and an agreement or practice prohibited under Article 81 EC."). Moreover, the Settlement Agreement with BA distinguishes the recovery available to the U.S. Settlement Class from that available to the U.K. Settlement Class, based on BA's potential liability to U.S. claimants for treble damages under antitrust law. ER 127.[5] Carnival is seeking to

---

[5] Section 10.1 of Carnival's settlement agreement with BA states: "In addition, because British Airways is potentially liable for treble damages under U.S. law, U.S. Settlement Class Members will be entitled to receive an additional payment per Qualifying Coupon of the pro rata share per Qualifying Coupon of $1 million (an 'Additional Payment')." ER 127.

establish itself as a member of the *U.K. Settlement Class*, to which this added compensation does not apply.

Under the plain language of the Settlement Agreements, the Airlines did not sell tickets for air travel to Carnival, but, instead, Carnival acted akin to a travel agent in booking flights for its customers. Moreover, neither the language nor the broader context of the Settlement Agreements limits the Settlement Class to those who might be considered "direct purchasers" under U.S. antitrust law. We therefore affirm the judgment of the district court denying Carnival's motion to enforce the Settlement Agreements.

**AFFIRMED.**