*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MICHAEL DECLERCK.

---

ROSEMARY DECLERCK,

        Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

        Respondent-Appellant.

UNPUBLISHED
June 18, 2019

No. 343483
Genesee Probate Court
LC No. 18-209083-PO

---

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Respondent, the Department of Health and Human Services (DHHS), appeals as of right a protective order entered by the probate court requiring that all of Michael DeClerck's income be paid to his wife, Rosemary DeClerck, and terminating Michael's rights to Rosemary's estate. Because the probate court abused its discretion by issuing the protective order, we vacate the order and remand for further proceedings.

## I. BASIC FACTS

Michael is an institutionalized individual who receives Medicaid benefits to cover part of his healthcare costs. His spouse, Rosemary, sought a protective order under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, claiming that she lacked sufficient income to meet her needs and asserting that she was entitled to support from Michael. The DHHS opposed the petition, arguing that Rosemary did not exhaust available administrative remedies regarding Medicaid determinations, that the proposed order would leave Michael impoverished and unable to meet his own obligations, and that Rosemary did not need additional income from Michael. Following two hearings on the matter, the probate court granted the petition and entered a support order requiring Michael to pay Rosemary all of his Social Security benefits and pension income, including cost of living increases.

-1-

## II. PROTECTIVE ORDER OF SPOUSAL SUPPORT

### A. STANDARD OF REVIEW

The DHHS first argues that, under *In re Estate of Vansach*, 324 Mich App 371; 922 NW2d 136 (2018), probate courts may not issue protective orders of spousal support without first considering the institutionalized spouse's needs and patient-pay obligations under Medicaid.[1] We review probate court decisions on the record, not de novo. *Id*. at 385. The court's factual findings are reviewed for clear error, and its "dispositional rulings, including a decision to enter a protective order, are reviewed for an abuse of discretion." *Id*. A probate court's failure to operate within the correct legal framework constitutes an abuse of discretion. *Id*. at 385, 402.

### B. ANALYSIS

The outcome of this case is governed by this Court's recent decision in *Vansach*. That case clarified that although "a probate court has the authority to enter a protective order providing support for a community spouse whose institutionalized spouse is receiving Medicaid benefits," that authority "does not include the power to enter an order preserving the community spouse's standard of living without consideration of the institutionalized spouse's needs and his or her patient-pay obligations under Medicaid." *Id*. at 376-377. The *Vansach* Court explained that in order to issue a protective order under MCL 700.5401(3)(b), "[t]he spouse requesting support must make a showing of need—not merely a desire to maintain a current standard of living without regard to the other spouse's circumstances." *Vansach*, 324 Mich App at 396. The Court reasoned:

> Whether the community spouse is "entitled" to "support" will depend on all the facts and circumstances, including the incapacitated individual's financial means and ability to provide assistance. For instance, when crafting a protective order, the probate court should consider the protected individual's "foreseeable needs," the interests of the protected individual's creditors, and the interests of the protected individual's dependents. See MCL 700.5408. A probate court considering a protective order should also bear in mind that the protected individual has the right to acquire, enjoy, and dispose of his or her own property. [*In re Conservatorship of*] *Bittner*, 312 Mich App [227,] 242[; 879 NW2d 227 (2015)]. Weighing the various concerns will obviously depend on the facts of each case, but a protected individual's rights and interests can never be totally disregarded in an effort to provide for his or her spouse. In other words, a community spouse cannot make a showing of "need" and is not "entitled to the [incapacitated] individual's support" merely to maintain his or her current

---

[1] "In the Medicaid context, and as used in this opinion, the term 'community spouse' refers to a spouse living at home, while the term 'institutionalized spouse' refers to a spouse who has been institutionalized, usually in a nursing home." *Vansach*, 324 Mich App at 376 n 2.

lifestyle when providing money to the spouse will leave the incapacitated individual entirely destitute and unable to meet his or her own needs.

In cases in which an institutionalized spouse is receiving Medicaid benefits, weighing both spouses' needs and circumstances requires consideration of those needs and circumstances as they actually exist under Medicaid. . . . . Consequently, along with any other relevant facts and circumstances, probate courts must consider the [community-spouse monthly income allowance] CSMIA[2] and any other resources available to the community spouse, the community spouse's "need" for additional support beyond the CSMIA, and the institutionalized spouse's need for income to meet the patient-pay amount related to his or her medical care under Medicaid. Importantly, a probate court's consideration of the couple's circumstances in light of Medicaid cannot involve a fallacious assumption that the institutionalized spouse should receive 100% free medical care under Medicaid or an assumption that a community spouse is entitled to maintain his or her standard of living. In actuality, Medicaid is a need-based program, and a Medicaid recipient is obligated to contribute to his or her care. See *Mackey [v Dep't of Human Srvs]*, 289 Mich App [688,] 693[; 808 NW2d 484 (2010)]. The unfortunate reality is that medical costs and increased expenses related to illness may affect both spouses, see *Mathews v De Castro*, 429 US 181, 188; 97 S Ct 431; 50 L Ed 2d 389 (1976), and even with the enactment of the spousal-impoverishment provisions, Medicaid provides no guarantee that a community spouse will enjoy "the same standard of living—even if reasonable rather than lavish by some lights—that he or she enjoyed before the institutionalized spouse entered a nursing home." *Balzarini v Suffolk Co Dep't of Social Servs*, 16 NY3d 135, 144; 944 NE2d 1113 (2011). "The trade-off for a married couple, of course, is that the institutionalized spouse's costly nursing home care is heavily subsidized by the taxpayer. . . ." *Id*. Having made this trade-off, a community spouse is not entitled to have the probate court simply disregard Medicaid, ignore the institutionalized spouse's patient-pay amount, and impoverish the institutionalized spouse in order that the community spouse may maintain his or her standard of living without regard for the institutionalized spouse's needs and circumstances as they exist under Medicaid. Such a procedure is not contemplated by EPIC, and it is a gross misapplication of the probate court's authority to enter an order when money is "needed" for "those *entitled* to the [incapacitated] individual's support." See MCL 700.5401(3)(b) (emphasis added). Instead, the actual Medicaid-related realities facing the couple—all of Medicaid's pros and cons—become part of the facts and circumstances that the probate court must consider when deciding whether to enter a support order for a community spouse under MCL 700.5401(3)(b).

---

[2] Under Medicaid, the CSMIA is designed to ensure that a community spouse has sufficient income to meet their minimum monthly maintenance needs allowance (MMMNA). See *Vansach*, 324 Mich App at 381; 42 USC 1396r-5(d)(2).

Ultimately, when a community spouse's institutionalized spouse receives Medicaid benefits and has a patient-pay amount, the community spouse seeking a support order under EPIC must show by clear and convincing evidence that he or she needs money and is entitled to the institutionalized spouse's support *despite* the CSMIA provided under Medicaid and the institutionalized individual's patient-pay amount under Medicaid. [*Vansach*, 324 Mich App at 397-399.]

Here, the probate court entered an order awarding Rosemary 100% of Michael's monthly income, thereby leaving Michael without sufficient income to support himself. In doing so, the court reasoned:

> It is clear from the record that without the protective order, the joint assets of Rosemary and Michael DeClerck will be depleted to the point that Rosemary will not be capable of supporting herself as she has supported Michael.

Absent from the court's findings is any indication that it considered (1) whether Rosemary needed—as opposed to simply wanted—money and (2) whether Rosemary was entitled to Michael's support despite the CSMIA provided under Medicaid and Michael's patient-pay amount under Medicaid. Because those findings are necessary before a probate court may enter a protective support order under MCL 700.5401(3)(b), we conclude that the probate court abused its discretion by entering the order awarding Rosemary 100% of Michael's monthly income. Accordingly, we vacate the court's order and remand for further proceedings consistent with the legal framework set forth in *Vansach*. See *Vansach*, 324 Mich App at 391-399.[3]

## III. JURISDICTION AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

## A. STANDARD OF REVIEW

The DHHS also argues that Rosemary was required to exhaust administrative remedies available before seeking a protective order from the probate court, and that the probate court should have declined to exercise jurisdiction until all administrative remedies were exhausted. Whether a court has jurisdiction is a matter of law that this Court reviews de novo. *Vansach*, 324 Mich App at 384.

---

[3] In its brief on appeal, the DHHS also suggests that no evidence was presented related to Michael's mental state or mental abilities so as to satisfy the requirement in MCL 700.5401(3)(a). However, at the hearing, the DHHS conceded that Michael was a vulnerable adult and would meet the criteria for a conservator under MCL 700.7501(4). Generally, a party may not intentionally relinquish an argument at the trial court level and then argue on appeal that the resultant action was error. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Accordingly, we decline to consider this unraised, unpreserved argument further.

B. ANALYSIS

In *Vansach*, the DHHS argued that the courts lacked jurisdiction to enter orders affecting Medicaid decisions. *Id*. at 385-386. The *Vansach* Court, however, concluded that "the statutory language governing Medicaid does not create an exclusive administrative remedy; rather, it acknowledges the possibility of judicial spousal-support orders . . . ." *Id*. at 388. Further, after reviewing the court's authority to enter support orders under Michigan law, the *Vansach* Court concluded that the probate courts had subject-matter jurisdiction to enter a protective order allowing the distribution of income to a protected individual's dependents and that Medicaid did not preempt the courts' ability to do so. *Id*. at 389-390. Finally, the court expressly stated that, "Medicaid did not establish administrative remedies as the sole means of relief or abolish any court's jurisdiction to enter a support order." *Id*. at 388. Applying *Vansach* to this case, we conclude that the DHHS's arguments as they pertain to the exhaustion of administrative remedies and the court's jurisdiction lack merit.

The DHHS contends that the *Vansach* Court did not address whether the exhaustion of administrative remedies under the relevant Medicaid provisions was a prerequisite to seeking a protective order under MCL 700.5401(3). However, although the *Vansach* Court recognized the general obligation to exhaust available administrative remedies before a court may exercise jurisdiction over a matter, *Vansach*, 324 Mich App at 386, the court also held that the relevant "Medicaid provisions providing for administrative proceedings do not confer *exclusive* jurisdiction on the DHHS with regard to the income allocation between spouses," *id*. at 386-387. In other words, although a challenge to the Medicaid decision would require an exhaustion of administrative remedies, the decision at issue before this Court is not a Medicaid decision. It instead involves the issuance of a protective order under MCL 700.3401(3), and, although the issuance of such an order can affect aspects of the Medicaid determination, it is nevertheless a separate proceeding under which the probate court has jurisdiction. Again, "Medicaid provisions providing for administrative proceedings do not confer *exclusive* jurisdiction on the DHHS with regard to income allocation between spouses." *Id*. In sum, different methods for obtaining support from an institutionalized spouse are permitted; in this case, Rosemary sought to avail herself of a protective order under EPIC as opposed to administratively appealing the CSMIA. The court had jurisdiction to enter the order notwithstanding Rosemary's failure to exhaust her administrative remedies.

Protective order vacated and case remanded for further proceedings. The probate court shall consider both spouses' needs in accordance with the legal framework set forth *Vansach*, 324 Mich App at 384-385. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly

-5-